

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00162-CR

_____

VAUGHN RAY BELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. CR-09-23218

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter

OPINION

In light of the Texas Court of Criminal Appeals recent opinion in *Snowden v. State*, No. PD-1524-10, 2011 Tex. Crim. App. LEXIS 1321 (Tex. Crim. App. Sept. 28, 2011) (designated for publication), we have withdrawn our previous opinion in this case issued September 14, 2011, and substitute this opinion. *See* TEX. R. APP. P. 19.1.

At some point during Vaughn Ray Bell's Fannin County jury trial for possessing the drug Ecstasy[1]—and without the record reflecting any action or threat by Bell that warranted such action—some form of physical restraint was placed on his person for the remainder of his trial.[2]

On appeal, Bell asserts that the evidence is insufficient to link him to the contraband and that the trial court reversibly erred in shackling Bell during trial. We conclude (1) sufficient evidence links Bell to the Ecstasy and (2) shackling Bell during trial, without individualized evidence of danger from Bell, was error, but (3) the shackling error was harmless.

*(1)     Sufficient Evidence Links Bell to the Ecstasy*

Bell argues the evidence is legally insufficient to link him to the contraband. The State responds that the evidence is sufficient to tend to connect Bell to the contraband.

---

[1]Specifically, Bell was charged with possessing one gram or more, but less than four grams, of a controlled substance in penalty group 2, to-wit: Ecstasy. The controlled substance known as Ecstasy is 3-4 methylenedioxymethamphetamine. The State provided notice of intent to enhance Bell's punishment, alleging two prior felony convictions. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116 (West 2010); TEX. PENAL CODE ANN. § 12.41(a)(3) (West 2011).

[2]The jury found Bell guilty, found both enhancements to be true, and assessed punishment at twenty years' imprisonment. The trial court sentenced Bell accordingly.

2

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

At trial, the State was required to prove that Bell exercised control, custody, management, or care over the Ecstasy and that he knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2011). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care if the proof amounts to more than a strong suspicion or probability. *Id*. "The 'affirmative links rule' is

3

designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

> When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.

*Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981).

One or more of the factors from the following nonexclusive list have been used to establish a person's possession of contraband:

> (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *see Evans*, 202 S.W.3d at 162 n.12. The number of links present is not as important as the degree to which

they tend to link the defendant to the controlled substance. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

While on patrol, Kevin Sanmann, a trooper with the Texas Department of Public Safety, noticed the vehicle driving immediately behind him lacked a front license plate and conducted a traffic stop. After initiating contact with the driver, Sanmann detected a moderate odor of marihuana in the vehicle. The driver of the vehicle informed Sanmann that he did not have a driver's license. After questioning the driver outside the vehicle, Sanmann approached Bell, who was still sitting in the passenger seat. Sanmann observed marihuana residue "on both sides of [Bell's] legs and a little bit right in the center, between his legs." Sanmann then requested Bell to step out of the vehicle and conducted a warrant check using Bell's name and date of birth. The warrant check discovered the existence of a warrant for Bell's arrest. Sanmann conducted a search of the vehicle and discovered marihuana residue on the passenger seat and passenger floorboard, as well as a pill bottle located between the console and the passenger seat. The pill bottles contained pills with a stamp resembling a fish. Sanmann testified pills containing stamps that resemble "objects or images" are "usually Ecstasy." Neither Bell nor the driver "accept[ed] responsibility" for the pill bottle. Due to the position of the pill bottle, Sanmann arrested Bell.

In addition to Bell's presence at the scene, there are multiple factors linking Bell to the Esctasy. Bell was closer to the contraband and the contraband was more accessible to Bell. The pill bottle was "shoved down" between the console and the passenger seat. The pill bottle was in

5

plain view. Sanmann testified that the top quarter of the pill bottle was exposed and that it could be seen outside the vehicle. Bell possessed other contraband, marihuana, in the same vicinity as the Esctasy. Besides the small amount of marihuana residue observed on the passenger seat,[3] Sanmann testified "[j]ust very little" residue was on Bell's clothes. Sanmann testified he did not discover any marihuana residue on the driver's side of the vehicle. The jury could have reasonably concluded Bell made furtive gestures. While questioning the driver, Sanmann observed Bell, who was a passenger in the vehicle, "inside the car, moving around." Although the record does not conclusively establish these gestures were furtive, a rational juror could have concluded they were.[4] Bell owned or had a greater right of possession of the vehicle where the contraband was located. Sanmann testified that the car belonged to Bell's wife, Tanya.[5]

Viewing these factors in the light most favorable to the verdict and since it was within the purview of the jury to weigh credibility and conflicts in the evidence, we conclude that a rational juror could find the essential elements of the offense beyond a reasonable doubt. The evidence

---

[3]We note the record contains a dismissal which states that the quantity was not a useable quantity. At oral argument, Bell argued we should not consider the presence of marihuana because it was not a useable quantity. We disagree; the presence of contraband is an affirmative link even if not a useable quantity.

[4]On cross-examination, Sanmann testified that he had asked Bell to look for the proof of insurance and conceded that Bell could have been following his instructions and that the movements did not factor into his "decisionmaking of whether or not [Bell] possessed something." On direct examination, Sanmann testified, based on his experience as a police officer, when "someone's moving around a lot in the vehicle," that "they're hiding stuff."

[5]On cross-examination, Sanmann testified that, on one occasion, Bell said "wife" and on another, Bell said "girlfriend." The record at guilt/innocence does not clearly establish the specific relationship of the parties. Regardless of whether Tanya was Bell's wife or girlfriend, the jury could reasonably deduce that Bell had a greater right of possession of the vehicle than the driver. We note that, during the punishment phase, Tanya testified she had been married to Bell for four years.

6

supporting Bell's conviction was sufficient to show Bell had control, management, custody, or care over the Esctasy.

*(2)    Shackling Bell During Trial, Without Individualized Evidence of Danger from Bell, Was Error*

Bell also argues that his rights to due process and presumption of innocence were violated by his being restrained during trial. Bell asserts that the trial court has a routine practice of shackling all criminal defendants who are in custody.

After the trial on the merits began, but before the conclusion of the guilt/innocence phase, the trial court ordered Bell shackled. The trial court's statements on the record strongly suggest its routine practice is to restrain all criminal defendants who have not been released on bond. The trial court stated, "Everybody who is in custody has the same necessity of restraint."[6] With

---

[6]During the guilt/innocence phase of trial, the following exchange occurred outside the presence of the jury:

> [Defense Counsel]:   . . . . I understand that we took a break because my client didn't have any leg irons on him and, currently, for the record, he has a chain that is linked between his two ankles, if I've described that correctly.   We would object to that being used as a device in front of the jury.   I think he has the right to a presumption of innocence and this chain, even though we will do the best to keep the jury from seeing it, if they do see it, that's going to destroy this presumption of innocence and deny him his right to a fair trial.
> We already have a sheriff's deputy standing within arm's reach of him, which should be sufficient amount of security.   We have a bailiff that's been present.   I believe we have two bailiffs now and -- in addition to -- two or three highway patrolmen right outside.   I don't think the chain is necessary.   I think it's going to deprive him of a fair trial and his rights under the United States and Texas Constitution.   So, we're going to object to that.

> THE COURT:   Any response from the State?

> [The State]:   Yes, Your Honor.  I would just ask the Court to have the bailiff provide a report as -- sitting in the various seats of the jurors' seats -- as to whether he can see the defendant's seat as the -- as he's currently configured and if he can see that the defendant is chained, making an obvious attempt to see that.

admirable candor,[7] the State conceded at oral argument that the trial court routinely restrains all criminal defendants who have not been released on bond.[8]

In its brief, the State concedes the trial court erred "by requiring Appellant to be shackled without finding a particularized reason for shackling that was specific to Appellant." There is a good reason for this concession—the law is well established that routine shackling of criminal

---

THE BAILIFF: No, ma'am, you can't. You can see the pants leg and the pants leg covers the cuffs up, so you cannot see the chains.

[Defense Counsel]: But that presupposes he's not allowed to move and, if he moves any, they're going to hear a chain rattle and they're going to look over here and go, who's rattling a chain, who's chained up, and it can only be my client that's chained up. I've been getting up, walking around; the bailiff has; everybody's been getting up except Ray. They hear that chain going, they're going to think he must have been doing something that got him chained up. There's really no need to have him chained up, Judge.

I don't think any of his offenses are escapes or failure to appears. I'm not swearing to that, but, as I remember off of his criminal history, he doesn't have anything like that, Judge. I don't think there's any evidence of any intent to flee.

THE COURT: [Defense Counsel], your objection is noted. It will otherwise be overruled. The bailiff's obligation is to the jury, not to an inmate. There is a person here to handle that. *Everybody who is in custody has the same necessity of restraint.* The difficulty is, the sheriff's office has one discreet and, therefore, we only have the one that's been available. We have allowed for y'all to position briefcases, and somebody went down and got an extra one so you have two. The State also has one under there. So, it's the Court's opinion that there is no impact on the presumption, and the defendant will just be mindful about movement of his legs, and we will be sure to give breaks for everybody to use the restroom and he can move his legs at that time.

(Emphasis added.)

[7]We appreciate the State's professionalism and integrity in making this concession and commend the State for clarifying the record in this regard.

[8]The State represented to this Court that a more discreet restraint is normally used than the restraint in this case. However, as this Court stated in *Austin v. State*, No. 06-07-00161-CR, 2008 Tex. App. LEXIS 8630 (Tex. App.—Texarkana Nov. 18, 2008, no pet.) (mem. op., not designated for publication), whether a restraint such as a "leg brace" was visible is not the correct question. While a restraint which is not visible may result in less harm, a trial court errs if it restrains a criminal defendant without specific reasons for the restraints in the record.

defendants is prohibited. "The law has long forbidden routine use of visible shackles during the guilt phase." *Deck v. Missouri*, 544 U.S. 622, 626 (2005).

Almost ninety years ago, the Texas Court of Criminal Appeals stated:

[I]f the record discloses no good reason for having the prisoner manacled during the trial the same will be cause for reversal; on the other hand, if, in the sound discretion of the court, it appears necessary to retain his shackles to prevent the escape or self-destruction of the prisoner, or to prevent him from injuring bystanders or officers of the court, or if necessary to maintain a quiet and peaceable trial, the court may try the prisoner without having the shackles removed; his action being subject to the closest scrutiny and review by the appellate court.

. . . .

We desire to make it perfectly plain that we regard a trial with the prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances, he should be very sure of his ground.

*Gray v. State*, 268 S.W. 941, 949–50 (Tex. Crim. 1924) (op. on reh'g). This general rule has been reaffirmed repeatedly.

The Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution guarantee criminal defendants the right to a fair trial. U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19; *Wynn v. State*, 219 S.W.3d 54, 59 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The use of restraints, such as shackles, cannot be justified based on a general appeal to the need for courtroom security or simple reference to the severity of the charged offense. *Long v. State*, 823 S.W.2d 259, 283 (Tex. Crim. App. 1991). The appearance of a defendant in

9

shackles before a jury during the guilt/innocence portion of trial, as well as the punishment phase,[9] can violate the defendant's Fifth and Fourteenth Amendment rights to due process. *Deck*, 544 U.S. at 629–34 (2005). "Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process." *Id*. at 630. In addition to undermining the presumption of innocence, visible[10] shackling "can interfere with the accused's 'ability to communicate' with his lawyer," ability to "participate in his own defense[,]" and "'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Id*. at 630–31. For these reasons, shackling is called for only in rare circumstances, and the record must detail the grounds for such action. *Cooks v. State*, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992); *Gray*, 268 S.W. at 950.

Before restraining a defendant at trial, a trial court must set forth with specificity the reasons supporting its decision to restrain the defendant. *Cooks*, 844 S.W.2d 722; *Long*, 823 S.W.2d at 282 ("the record must clearly and affirmatively reflect the trial judge's reasons

---

[9]In *Deck*, the United States Supreme Court announced that a trial court errs in shackling a defendant during the punishment phase of a trial when there is no evidence that the defendant was violent, likely to flee, or had otherwise disrupted the trial. *Deck*, 544 U.S. at 630–31.

[10]*Deck* concerned restraints that were only visible. *See id.* at 628. The law, though, is well-established that any form of restraints requires the record to reflect reasons specific to the criminal defendant. *See Austin*, 2008 Tex. App. LEXIS 8630. This case presents an additional issue not discussed by the United States Supreme Court in *Deck*. The record contains some evidence the restraints may have been audible. In this case, Bell's trial counsel stated the chains would be audible. The trial court did not take exception to this statement and instructed the defendant to be "mindful about movement of his legs . . . ." On appeal, Bell directs our attention to numerous references to the record where the jury entered and exited the courtroom. Bell argues he was required to rise for the jury, which resulted in the "rattling of the chains." The record does not reflect the defendant rose and does not reflect the chains rattled, but the record also does not reflect that the defendant did not rise and does not reflect that the chains did not rattle. In *Wiseman v. State*, the First District Court of Appeals considered, among other factors, the defense counsel's statement on the record that the chains were audible. *Wiseman v. State*, 223 S.W.3d 45 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

therefor"); *Marquez v. State*, 725 S.W.2d 217, 227 (Tex. Crim. App. 1987). Only in rare circumstances is shackling called for, and in such event, the record must detail the grounds for such action. *Long*, 823 S.W.2d at 282; *Jacobs v. State*, 787 S.W.2d 397, 407 (Tex. Crim. App. 1990); *Marquez*, 725 S.W.2d at 227. Even if a trial court does not err in ordering shackles, all efforts must be made to ensure the jury does not view the defendant in shackles. *Long*, 823 S.W.2d at 282; *Ziolkowski v. State*, 223 S.W.3d 640, 643 (Tex. App.—Texarkana 2007, pet. ref'd).

On appeal, the role of an appellate court is to determine whether the trial court erred in ordering the restraints. *Long*, 823 S.W.2d at 282. Even in the face of error, reversal may not be called for if such was harmless. *Cooks*, 844 S.W.2d at 723; *Long*, 823 S.W.2d at 283. In this case, the record fails to reveal any reasons, other than a general concern for courtroom safety and general concern that a criminal defendant might flee, to justify the use of restraints. The trial court did not base its decision on any evidence that Bell had previously committed violent acts, that Bell was likely to flee, or that Bell had otherwise disrupted the trial.[11]

---

[11]The State directs our attention to its notice of intent to introduce evidence of extraneous offenses and bad acts. We note that, at punishment, the State introduced evidence of Bell's extensive criminal history. Although the vast majority of the offenses were for possession of controlled substances, the State did introduce evidence of misdemeanor convictions for evading arrest, resisting arrest, and terroristic threat. At the time Bell was ordered restrained, the record did not contain evidence of these prior offenses, and the trial court did not reference these prior offenses when deciding to restrain Bell.

11

Certainly courtrooms are places where violence can occur.[12]   Our role is not to second guess the trial court's discretion in controlling the courtroom and ensuring the safety of the litigants, participants, and witnesses in attendance.   If a criminal defendant has acted in a manner providing justification for restraints, it is well within the trial court's sound discretion to order such defendant restrained during trial.   A trial court, though, abuses its discretion when the court restrains a criminal defendant without reasons, on the record, specific to that defendant.   Because the record in this case fails to contain any justification for the shackling beyond a general concern for courtroom safety, the shackling of Bell was error.

*(3)     The Shackling Error Was Harmless*

Bell argues, citing *Deck*, 544 U.S. at 629–34, that the State has the burden to establish beyond a reasonable doubt that the error was harmless.   Because there is no evidence the error did not result in harm, Bell argues the error was reversible.   In *Deck*, the United States Supreme Court concluded that the lack of evidence showing no harm mandated a reversal.   *Id*. at 634.   As noted above, *Deck* concerned visible restraints.   The United States Supreme Court did not address whether the same standards for harmless error would apply if the restraints are not perceived by the jury.   We conclude *Deck* is distinguishable from this case due to the fact that there is no evidence, in this case, that the restraints were perceived by the jury.   To the extent the tests may differ, we

---

[12]On July 1, 1992, a gunman opened fire in the courtroom of the Fort Worth Court of Appeals killing two attorneys and wounding at least two others, including a former law clerk to this Court.   *See Davis v. State*, 890 S.W.2d 489, 491 n.1 (Tex. App.—Eastland 1994, no pet.).

will evaluate the effect of the error in this case under the *Chapman* test,[13] as codified by Rule 44.2(a) of the Texas Rules of Appellate Procedure as interpreted by Texas caselaw.

In our original opinion in this case, we used the factors announced in *Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989). In *Harris*, the Texas Court of Criminal Appeals provided the following guidance:

> [T]he court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id*. at 587–88.

In *Motilla v. State*, the Texas Court of Criminal Appeals clarified that overwhelming evidence of guilt, while not determinative, is a factor that can also be considered. 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002) (explaining discussion in *Harris* concerning weight a juror would probably place on the error factor). In *Mason v. State*, the Texas Court of Criminal Appeals held the factors announced in Harris are not applicable to Rule 44.2(b) of the Texas Rules of Appellate Procedure harmless error analysis of nonconstitutional errors. 322 S.W.3d 251, 258 n.10 (Tex. Crim. App. 2010) (noting "that the Harris factors might still be applicable in Rule 44.2(a) analyses").

---

[13]"The Chapman test is codified in Texas Rule of Appellate Procedure 44.2(a), which provides that constitutional error requires reversal of the judgment 'unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.'" *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (quoting TEX. R. APP. P. 44.2(a)).

Since our original opinion was released, the Texas Court of Criminal Appeals has announced the elimination of two of the *Harris* factors: the source of the error and whether declaring the error harmless would encourage repetition of the error with impunity. *Snowden*, 2011 Tex. Crim. App. LEXIS 1321. The court reasoned that the above two factors were punitive and that *Harris* erred in including "within its ambit any concern for the integrity of future trials." *Id*. at *17. The court emphasized the inquiry "should adhere strictly to the question of whether the error committed in a particular case contributed to the verdict obtained in that case." *Id*. The Texas Court of Criminal Appeals, though, did confirm that the remaining *Harris* factors—the nature of the error, whether the error was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations—continue to be valid considerations. *Id*. at *18. The court, though, noted these factors "are not exclusive considerations in any particular case" and our inquiry should be "whether, or to what extent, the error may have contributed to the conviction." *Id*.

The first remaining factor is the nature of the error. The error in this case violates well established constitutional rights. Conducting a trial where the defendant is in shackles, without a particularized showing of the need for the shackles in that defendant's case, is "obnoxious to the spirit of our laws and all ideas of justice." *Ziolkowski*, 223 S.W.3d at 643 (quoting *Gray*, 268 S.W. at 950). We continue to believe that the violation of a well established constitutional right adversely affects the integrity of the process leading to a conviction. In the pre-*Snowden* analysis,

this factor would strongly favor a finding of reversible error. Given the *Snowden* rationale, however, our harm analysis should assess just the effect of the error on this particular verdict or result. Although obnoxious to the spirit of our laws, the nature of this error did not contribute to the judgment in this case. This factor weighs neither for nor against a finding of harm.

The second factor is the extent the error was emphasized by the State. We have not been directed to anywhere in the record that the State emphasized the error in any manner. Bell argues the State moved one of the briefcases shielding the shackles from the jury's view when it used it as a demonstrative aid. The record does reflect that the State used a briefcase as a demonstrative aid, but the record does not reflect that this briefcase was one of the briefcases blocking the shackles from the jury's view.[14] We have not been directed to anywhere in the record the State made a reference to or otherwise drew attention to the defendant's restraints. Our own review of the record has not revealed any such reference. Clearly, the State did not emphasize the error or seek in any way to benefit from the error. This factor weighs strongly in favor of a finding that the error is not harmful.

The third factor is the weight a juror would probably place on the error, assuming he or she was aware of the error. In this connection, we should also consider whether the evidence was overwhelming as well as the character of the error and how it might be considered in connection

---

[14]The State represented at oral argument that the briefcase used as a demonstrative aid was not the same briefcase used to block the shackles from the jury's view. This representation, though, is not part of the record. Regardless, as noted above, the record does not demonstrate the briefcase used as a demonstrative aid was one of the briefcases shielding the shackles from the jury's view.

with other evidence in the case. *Motilla*, 78 S.W.3d at 359. Although the evidence of guilt was sufficient, the evidence linking Bell to the contraband was not overwhelming. The record, though, is silent on whether the jury perceived the shackles. In fact, the record does contain indications that steps were taken to keep the jury from perceiving the shackles. We conclude that this factor does not weigh for a finding of harm.

The fourth factor is the error's probable collateral consequences. This factor requires us to "contemplate such things as the disparaging of a sole defense," as well as "a probable affect on the harshness of the punishment." *Higginbotham v. State*, 807 S.W.2d 732, 737 (Tex. Crim. App. 1991). As noted above, the affirmative links, although sufficient, were not overwhelming. Bell's main defense was that the contraband did not belong to him. It should be contemplated that the restraints, if perceived by the jury, could have alleviated some lingering doubts the jury had concerning whether Bell possessed the contraband. While Bell had an extensive criminal history, here he received the maximum sentence available. Again, though, because the record is silent on whether the jury perceived the shackles, and steps were taken to avoid the jury perceiving them, we do not weigh this factor for a finding of harm.

After careful consideration of the above factors, we conclude the error in this case did not result in harm to this defendant in this case. The lack of emphasis placed on the error by the State weighs strongly against a finding of harm, and the remaining factors do not suggest a finding of harm. The Texas Court of Criminal Appeals has instructed that our inquiry must be focused on

16

whether the error may have contributed to this defendant's conviction. We conclude, beyond a reasonable doubt, that the error by the trial court did not contribute to the judgment in this case.

For the reasons stated, we affirm.

Josh R. Morriss, III
Chief Justice

DISSENTING OPINION

What is the appellate court's duty when it is clear that a trial court deliberately and repeatedly violates well-known and established constitutional rights of those accused of a crime? We must eradicate the practice. The majority opinion fails to do this and has now reversed its course based on a recent Texas Court of Criminal Appeals opinion, *Snowden v. State*.[15] I believe this Court's original opinion is sound. The stated reason for this switch is that *Snowden* no longer allows an appellate court to consider, on the issue of harmfulness of error, whether the failure to

---

[15] *Snowden v. State*, No. PD-1524-10, 2011 Tex. Crim. App. LEXIS 1321 (Tex. Crim. App. Sept. 28, 2011) (designated for publication).

17

reverse for an admitted constitutional error would encourage "the State" to repeat that error with impunity.

I do not think *Snowden* applies in this case. In *Snowden,* the error was committed by the State's attorney, whereas here the action found to be a constitutional error (placing a chain connecting two iron ankle rings on the ankles of the defendant during jury trial) was the action of the trial court. In *Snowden*, the error was the improper argument of the State's counsel which infringed on the defendant's right to remain silent—an action taken by one of the advocates in the proceeding; the trial court merely ruled. The acts which constituted the error in this case were solely and completely caused by the trial judge without involvement by the State's counsel. The State never requested that the defendant be shackled during the trial, and the record reveals that the chain was placed on the defendant as a practice of this particular court for those who are in jail awaiting trial, but apparently not for those able to afford bail ("everybody who is in custody has the same necessity of restraint"). Apparently, shackling is required for all in custody with no judgment or discretion being exercised on an individual basis. It is the duty of the trial court to attempt to avoid error; only the appellate courts may determine, after a review of the entire case, if an error is of such a nature as to require another trial. In oral argument, State's counsel conceded there was no basis for shackling the defendant and agreed that constitutional error occurred.

Generally, the trial court commits error by ruling on issues brought before it by one of the parties. It is a far different situation when the action which is a constitutional error is caused by

18

the judge. If counsel seeks to continually violate well-established constitutional provisions, the trial judge is in a position to prevent or control it. Who prevents the judge from continually violating established constitutional rights? A basic premise of our system of justice is that the accused should be presumed innocent until proven guilty beyond a reasonable doubt. It is the function of the trial judge to institute procedures that will assure this—instead, here, the judge, without any cause, ordered that a chain be placed on the defendant's ankles during the jury trial. The record indicates this is a repeated practice in this trial court, but we are now holding that since we cannot know for sure if the jury saw the chain or heard it rattle, the trial court's deliberate violation of such a well-known constitutional right does not constitute reversible error.[16]

Additionally, it is important that our courts operate with dignity. The use of such devices undermines the dignity of judicial proceedings. *Deck v. Missouri*, 544 U.S. 622, 631 (2005). Even if we now believe that consideration of the prevention of continual violation of constitutional rights is irrelevant as to the propriety of the outcome, it is highly relevant to the "the integrity of the process leading to the conviction."

As one who spent twenty-one years on the trial bench and has devoted most of his life attempting to provide fair operation of one small part of our system of law, it is deeply offensive to observe the sanctioning of this practice. In essence, this case says—Judge, you may continually violate the most basic constitutional rights of our citizens with impunity, the very Constitution you

---

[16]Defense counsel objected that any movement by Bell would cause the jury to hear a chain rattle. The court admonished Bell to be "mindful about movement of his legs . . . ."

19

took an oath to protect and defend, and your case will be affirmed unless the defendant is clever enough to produce evidence, contrary to his best interest at trial, that the jury saw or heard the chains. Even if the jury saw or heard the chains and it is not reflected in the record, you are safe with the appellate courts, regardless of the harm your continual unconstitutional practice does to the perception of fairness and the integrity of the process in our courts.

Due to their very nature, constitutional errors require more scrutiny. When constitutional errors occur, our inquiry should be focused on the integrity of the process. In other words, did the defendant receive a fair trial. The restraints in this case were described as a chain connecting two iron ankle rings; our Texas Court of Criminal Appeals has found "a trial with a prisoner in irons [is] obnoxious to the spirit of our laws and all ideas of justice." *Gray v. State*, 268 S.W. 941, 949–50 (Tex. Crim. 1924) (op. on reh'g). No trial can be considered a fair trial where a defendant, who has not been shown to be a threat, is literally tried in chains that may have been seen or heard by the jury; an error depriving a defendant of a fair trial cannot be considered harmless. The error here was of constitutional magnitude; it was knowingly committed and is an ongoing practice in this trial court; there is no basis to reasonably conclude that beyond a reasonable doubt, the error did not contribute to the defendant's conviction or punishment. TEX. R. APP. P. 44.2. It should be remanded for another trial.

I respectfully, but vigorously, dissent.


                                        Jack Carter
                                        Justice


Date Submitted:      November 2, 2011
Date Decided:        November 3, 2011

Publish