TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00402-CV






Texas Department of Public Safety, Appellant



v.



Alexandro Molina Jimenez, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 239,143, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING 







 Appellant Texas Department of Public Safety (the "Department") appeals from a
trial court order affirming an administrative decision that the Department failed to prove the
statutory requirements to authorize it to suspend appellee Alexandro Molina Jimenez's driver's
license. See Tex. Transp. Code Ann. §§ 524.035, .041 (West 1999). We will reverse the trial
court order and remand the cause to the agency for proceedings consistent with this opinion.


BACKGROUND

 At approximately 3:20 a.m. on November 15, 1997, Austin Police Department
Officer Michele Aparicio was dispatched to the scene of an accident on the frontage road of IH-35
in Austin. Jimenez was at the scene, and he told Aparicio that he had been driving south on the
frontage road but he did not know how the accident happened. Aparicio detected the odor of
alcohol emitting from Jimenez, and she noticed that he had bloodshot eyes. Aparicio asked
Jimenez whether he had been drinking any alcohol that night and he admitted that he had. 
Aparicio administered several field sobriety tests, which Jimenez could not satisfactorily perform. 
Aparicio arrested Jimenez for driving while intoxicated ("DWI"). (1) Jimenez agreed to take a
breath test, and the result slip indicated alcohol concentrations of 0.157 and 0.155. Because his
alcohol concentration exceeded the legal limit of 0.10, Jimenez's driver's license was
automatically suspended. See Tex. Transp. Code Ann. §§ 524.011, .012 (West 1999); Tex. Penal
Code Ann. § 49.01(2)(B) (West 1994).

 Jimenez requested a hearing to contest his license suspension. See Tex. Transp.
Code Ann. § 524.031 (West 1999). In order to sustain a license suspension, the administrative
law judge ("ALJ") must find by a preponderance of the evidence at the suspension hearing that:
(1) the arresting officer had reasonable suspicion to stop or probable cause to arrest the person;
and (2) the person was operating a motor vehicle in a public place with an alcohol concentration
of 0.10 or more. See Tex. Transp. Code Ann. § 524.035(a) (West 1999). If the ALJ finds in the
affirmative on each issue, the suspension is sustained; if the ALJ does not find in the affirmative
on each issue, the Department is required to reinstate the person's driver's license. See id.
§ 524.035(b), (c).

 At the administrative hearing, Jimenez objected to the introduction of his breath test
results because there was no testimony or affidavit from the breath test operator establishing that
the breath test had been properly administered to Jimenez. Jimenez argued that without a
statement from the breath test operator, there was no proper predicate for the introduction of the
breath test results. The Department argued that the affidavit of the breath test technical
supervisor, which had been admitted into evidence, was sufficient to lay the necessary predicate
to admit the breath test results. The ALJ sustained Jimenez's objection and issued an
administrative decision concluding that the Department had failed to prove that Jimenez was
operating a motor vehicle with a blood alcohol concentration of 0.10 or greater. In its findings
of fact, the ALJ noted that the breath test slip was not admitted into evidence and that "all other
references to the results were objected to and such objection was sustained."

 The Department appealed the ALJ's decision to the county court, and the county
court affirmed the ALJ's decision. The Department now appeals to this Court, arguing that the
ALJ abused its discretion by excluding the breath test results because: (1) the Department
established the predicate for the admission of the breath test results in an administrative license
suspension hearing by submitting an affidavit satisfying the requirements of Transportation Code
section 524.038; or, alternatively, (2) even if the standard for admission of breath test results
applicable in criminal cases applies in administrative license suspension hearings, the testimony
of the operator is necessary only when the defendant raises an issue of fact as to the proper
administration of the test.


DISCUSSION

 We will first address the Department's argument that the predicate for the admission
of breath test results in an administrative license suspension hearing is established by the
Transportation Code, which provides:


§ 524.038. Instrument Reliability and Analysis Validity. 


(a) The reliability of an instrument used to take or analyze a specimen of a
person's breath to determine alcohol concentration and the validity of the
results of the analysis may be attested to in a proceeding under this subchapter
by affidavit from the certified breath test technical supervisor responsible for
maintaining and directing the operation of breath test instruments in
compliance with department rule.


(b) An affidavit submitted under Subsection (a) must contain statements on:


 (1) the reliability of the instrument and the analytical results; and


 (2) compliance with state law in the administration of the program.


(c) An affidavit of an expert witness contesting the reliability of the instrument or
the results is admissible.


(d) An affidavit from a person whose presence is timely requested under this
section is inadmissible if the person fails to appear at a hearing without a
showing of good cause. Otherwise, an affidavit under this section may be
submitted in lieu of an appearance at the hearing by the breath test operator,
breath test technical supervisor, or expert witness.



Tex. Transp. Code Ann. § 524.038 (West 1999). The Department submitted into evidence an
affidavit from Rudy Bohac, the custodian of records and technical supervisor for Area 019 of the
Breath Test Alcohol Testing Program. Bohac's affidavit states that "CA Cardona," a certified
breath test operator, administered the breath test to Jimenez on a certified instrument; "the test was
administered in compliance with the laws of the State of Texas and Regulations of the Breath
Alcohol Testing Program"; the records show that the intoxilyzer used to conduct the test "was
reliable and in proper working condition at the time of the test"; the test was valid; and the test
results disclosing alcohol concentrations of 0.157 and 0.155 were "valid analytical results." The
Department argues that because Bohac's affidavit satisfied the requirements of Transportation
Code section 524.038, it fulfilled the predicate for admitting the breath test results in an
administrative license suspension hearing; therefore, the ALJ abused its discretion by excluding
the breath test result. See Texas Dep't of Pub. Safety v. Mendoza, 956 S.W.2d 808, 810 (Tex.
App.--Houston [14th Dist.] 1997, no pet.) (administrative decisions regarding admission or
exclusion of evidence reviewed under abuse of discretion standard applied to trial courts).

 Jimenez contends that it was reasonable for the ALJ to exclude the breath test result
because regardless of the predicate established by section 524.038 as to the reliability of the
intoxilyzer and breath test results, the breath test operator still must testify or submit an affidavit
for the breath test result to be admissible. He offers several arguments for this position. First,
he contends that the breath test results are hearsay, citing Stevensen v. State, 895 S.W.2d 694
(Tex. Crim. App. 1995). Contrary to Jimenez's argument, however, the court of criminal appeals
did not hold in Stevensen that intoxilyzer results are hearsay. Rather, the court held that the
statute governing the admissibility of breath test results did not provide for blanket admissibility
of breath test results in DWI cases "regardless of the form in which evidence is presented," and
that the rule against hearsay evidence could render breath test evidence inadmissible. See
Stevensen, 895 S.W.2d at 696. The court remanded Stevensen to the court of appeals so that court
could determine whether the intoxilyzer results constituted hearsay. See id. at 697. On remand,
the court of appeals held that intoxilyzer results are not hearsay because an intoxilyzer is not a
declarant. See Stevensen v. State, 920 S.W.2d 342, 343 (Tex. App.--Dallas 1996, no pet.) (on
remand). "The intoxilyzer instrument self-generates data. The information reflected on the
printout is the result of the computer's internal operations. . . . Because the intoxilyzer is not a
declarant, the data it generates is not a statement and cannot be hearsay." Id. (citations omitted);
see also Grady v. State, 962 S.W.2d 128, 131 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd)
(trial court did not err in admitting intoxilyzer results because intoxilyzer results not hearsay). We
agree with those courts that have determined that intoxilyzer results are not hearsay.

 Jimenez argues next that section 524.038 establishes only a predicate for the
reliability of the intoxilyzer and the test result; it does not provide that the test results themselves
are admissible through the testimony of the technical supervisor. Jimenez contends that only the
breath test operator can verify that Department regulations were followed during the
administration of the breath test to an individual defendant. We have held, however, that
intoxilyzer results are not hearsay; therefore, the technical supervisor may review the information
in the intoxilyzer printout to determine whether the test was administered in compliance with
Department regulations and whether the results are valid. See Stevensen, 920 S.W.2d at 344. 
Furthermore, the affidavit avers that the breath test operator who conducted the test is certified
and is trained in the required methodology for breath testing. Jimenez has never suggested that
his test was not properly administered, although the Transportation Code permits him to submit
the affidavit of an expert witness contesting the reliability of the test results. See Tex. Transp.
Code Ann. § 524.038(c). 

 Finally, we note that if an affidavit from the certified breath test technical
supervisor is to be used in a license suspension proceeding, section 524.038 requires that the
affidavit contain statements on the reliability of the instrument and the analytical results and
compliance with state law in the administration of the program. See id. § 524.038(b)(1), (2). The
statute does not provide any requirements for an affidavit from the breath test operator; it merely
permits the operator to submit an affidavit in lieu of an appearance if his or her presence is not
requested. See id. § 524.038(d). The statute does not require the presence of the breath test
technical supervisor at each particular breath test, because it requires only that the technical
supervisor attest to compliance with state law in the administration of the Texas Breath Alcohol
Testing Program. See id. § 524.038(b)(2); see also Texas Dep't of Pub. Safety v. Cantu, 944
S.W.2d 493, 496 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (section 524.038 controls
admissibility of technical supervisor's affidavit, provides statutory exception to the hearsay rule,
and does not require presence of the supervisor when test is administered).

 Jimenez makes one final argument to support the ALJ's decision to exclude the
breath test results. He contends that under Texas Rule of Evidence 702 (2) and Hartman v. State,
946 S.W.2d 60 (Tex. Crim. App. 1997), breath test results are scientific evidence and as such the
evidence must be proven reliable by satisfying a three part test: (1) the underlying scientific
theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique
must have been properly applied on the occasion in question. See Hartman, 946 S.W.2d at 62. 
The Department argues that through Transportation Code section 524.038, the legislature has
statutorily acknowledged the scientific theory and technique of the intoxilyzer. In Stevensen, the
court of criminal appeals noted that former article 6701l-5, section three, (3) which provided that a
breath analysis was admissible in criminal DWI proceedings, recognized the scientific reliability
of breath tests when they are performed in accordance with the statute. See Stevensen, 895
S.W.2d at 696; see also Hartman, 946 S.W.2d at 64 (Keller, J., concurring and dissenting) ("The
Legislature has statutorily dispensed with any need to analyze the validity of the theory and
technique behind the intoxilyzer."). We agree that the legislature has statutorily recognized the
validity of the theory and technique behind the intoxilyzer through Transportation Code section
524.038. Furthermore, the third prong of the Hartman test is satisfied by the technical
supervisor's affidavit, because he attested to the validity of the results of the breath analysis on
the occasion at issue, as he is permitted to do in administrative license suspension hearings. See
Tex. Transp. Code Ann. § 524.038(a), (b).

 We sustain the Department's first issue and hold that the ALJ abused its discretion
by excluding the breath test results. The improper exclusion of breath test results in this
administrative license suspension case constitutes reversible error. See Tex. R. App. P. 44.1(a)(1)
(judgment may be reversed if error probably caused rendition of improper judgment); City of
Amarillo v. Railroad Comm'n, 894 S.W.2d 491, 495 (Tex. App.--Austin 1995, writ denied) (to
prevail on issue asserting abuse of discretion, error must be so injurious or prejudicial that it
constitutes reversible error). Our holding is dispositive; therefore, we need not address the
contentions raised in the Department's second issue.

CONCLUSION

 We reverse the order of the county court upholding the administrative decision that
the Department is not authorized to suspend Jimenez's license. We remand to the agency for
further proceedings.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Reversed and Remanded

Filed: June 10, 1999

Publish

1. See Tex. Penal Code Ann. § 49.04 (West 1994 & Supp. 1999).
2. Rule 702 states, "If scientific . . . knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto
in the form of an opinion or otherwise." Tex. R. Evid. 702.
3. Tex. Rev. Civ. Stat. Ann. art. 6701l-5, § 3, repealed by Act of April 21, 1995, 74th Leg.,
R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871.


e reliability of the instrument and the analytical results and
compliance with state law in the administration of the program. See id. § 524.038(b)(1), (2). The
statute does not provide any requirements for an affidavit from the breath test operator; it merely
permits the operator to submit an affidavit in lieu of an appearance if his or her presence is not
requested. See id. § 524.038(d). The statute does not require the presence of the breath test
technical supervisor at each particular breath test, because it requires only that the technical
supervisor attest to compliance with state law in the administration of the Texas Breath Alcohol
Testing Program. See id. § 524.038(b)(2); see also Texas Dep't of Pub. Safety v. Cantu, 944
S.W.2d 493, 496 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (section 524.038 controls
admissibility of technical supervisor's affidavit, provides statutory exception to the hearsay rule,
and does not require presence of the supervisor when test is administered).

 Jimenez makes one final argument to support the ALJ's decision to exclude the
breath test results. He contends that under Texas Rule of Evidence 702 (2) and Hartman v. State,
946 S.W.2d 60 (Tex. Crim. App. 1997), breath test results are scientific evidence and as such the
evidence must be proven reliable by satisfying a three part test: (1) the underlying scientific
theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique
must have been properly applied on the occasion in question. See Hartman, 946 S.W.2d at 62. 
The Department argues that through Transportation Code section 524.038, the legislature has
statutorily acknowledged the scientific theory and technique of the intoxilyzer. In Stevensen, the
court of criminal appeals noted that former article 6701l-5, section three, (3) which provided that a
breath analysis was admissible in criminal DWI proceedings, recognized the scientific reliability
of breath tests when they are performed in accordance with the statute. See Stevensen, 895
S.W.2d at 696; see also Hartman, 946 S.W.2d at 64 (Keller, J., concurring and dissenting) ("The
Legislature has statutorily dispensed with any need to analyze the validity of the theory and
technique behind the intoxilyzer."). We agree that the legislature has statutorily recognized the
validity of the theory and technique behind the intoxilyzer through Transportation Code section
524.038. Furthermore, the third prong