

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00213-CR
_____

ALDRENDO GILL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 24244

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Aldrendo Gill appeals his conviction by the trial court for possession of less than four grams but more than one gram of a controlled substance in Penalty Group 1, namely cocaine, with intent to deliver, enhanced by one prior felony conviction. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010); TEX. PENAL CODE ANN. § 12.42(b) (West Supp. 2011). As Officers David Rowton and Joshua Crawford, of the City of Paris Police Department approached on foot the west side of Big 6 Domino Hall on the night in question, they detected the odor of marihuana. A number of people were scattering as the officers approached, and they observed Gill standing by himself. Officer Rowton observed Gill drop something and put his hands up. Near Gill's feet, the officers discovered two baggies of what was later identified as crack cocaine and a small package of marihuana. Gill waived his right to a jury trial, and the trial court found Gill guilty. Gill pled true to the enhancements; the trial court found the enhancements to be true and assessed punishment at forty years' imprisonment.

Gill raises two issues on appeal. He contends the evidence is legally insufficient because the State failed to prove sufficient affirmative links to tend to connect him to the contraband. Further, Gill argues the trial court erred in permitting Rowton to testify as an expert witness concerning chemistry.

**There Are Sufficient Affirmative Links**

In his first issue, Gill argues that the State presented legally insufficient evidence affirmatively linking him to the controlled substances. According to Gill, the State merely established his presence at the scene. Gill argues the evidence at trial established that the controlled substances more likely belonged to an unidentified female who fled the scene.

2

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

At trial, the State was required to prove that Gill exercised control, custody, management, or care over the controlled substances and that he knew the matter possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 596 (Tex. Crim. App. 2011); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2011). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care if the proof amounts to more than a strong suspicion or probability. *Id.* "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

The affirmative links in the following nonexclusive list have been recognized as relevant to a person's possession of contraband:

(1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd). The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

Gill argues the evidence demonstrated the controlled substances belonged to an unidentified female who fled the scene. Officer Rowton testified that an African-American female fled the scene as they approached. Gill argues, "Obviously, the woman had contraband. She ran to the area in which Gill was located." Rowton, though, testified the fleeing unidentified female only ran within approximately thirty feet of Gill. Further, the State is no longer required to disprove every other reasonable hypothesis. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd).

4

As noted by the defense, Gill did not flee,[1] there is no evidence that an odor of contraband was emanating from Gill, and Gill did not have a right of possession to the place where the contraband was found. Gill also notes the police failed to fingerprint the baggies. The affirmative links listed above, however, are not exclusive, and the State has no obligation to prove every affirmative link in every case. The affirmative link test is a weighing test, not a balancing test. "The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the accused to the contraband." *Bates v. State*, 155 S.W.3d 212, 217 (Tex. App.—Dallas 2004, no pet.); *see Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); *Washington v. State*, 215 S.W.3d 551, 554 (Tex. App.—Texarkana 2007, no pet.). The issue is whether sufficient links exist. The absence of certain affirmative links does not counter-balance the affirmative links that have been established.

As argued by the State, the record contains sufficient affirmative links to tend to connect the controlled substances to Gill. The baggies with cocaine were found "inches" from Gill's feet in plain view. Officer Rowton testified that Gill was standing by himself. Rowton testified he saw a black female approximately thirty feet from Gill and otherwise "the closest distance was 30, 40, 50 yards." Gill was found with a large amount of cash, totaling $1,414.00. Rowton testified that Gill "made a movement toward the ground, as if a person was dropping something. . . ." and that this movement was furtive.[2] The State presented some evidence Gill

---

[1]We note the State argues Gill attempted to flee, citing Officer Rowton's testimony. We have not located where Rowton testified that Gill attempted to walk away. Rowton merely testified that he told Gill not to move.

[2]"Furtive" is defined as surreptitious, underhanded, or by stealth. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 509 (11th ed. 2006).

possessed paraphernalia related to marihuana. Rowton testified Gill "had the tobacco wrapper in the palm of his hand, open. There was no shredded tobacco in it." As explained by Rowton, the tobacco wrapper from a cigar is often used to roll marihuana cigarettes.

Finally, the State presented some evidence of incriminating statements. Gill argues he did not make any incriminating statements when arrested and has never claimed the controlled substances belonged to him. While correct, the State did present evidence that Gill made an incriminating statement approximately five days later. The State introduced evidence, without objection, that Gill was arrested approximately five days later for possession of methamphetamine. Officer Crawford testified that Gill "made some voluntary statements, claiming the methamphetamine was not his," including the statement, "I sell crack, I do not sell meth." While this is not an admission that the cocaine was his, Gill's claim that he is a crack dealer is an affirmative link to the crack cocaine.

While Gill was not in exclusive possession of the place where the controlled substances were found, a rational juror could have found beyond a reasonable doubt that Gill exercised control, custody, management, or care over the controlled substances and that he knew the matter possessed was contraband. The record contains sufficient evidence that tends to link Gill to the cocaine. The evidence is legally sufficient.

**The Trial Court Abused Its Discretion in Allowing Officer Rowton to Testify as an Expert Concerning Chemistry**

Gill's second issue argues the trial court erred in permitting Rowton to testify as an expert concerning scientific evidence. When Rowton arrested Gill, Rowton swabbed Gill's jacket and hoodie pockets with a "cocaine wipe," and then performed the "SIRCHIE Narco" test,

6

which consists of a pink pad that turns blue when it "comes in contact with a cocaine base."[3]

Officer Rowton testified both returned "a positive result for the presence [of] cocaine." The trial

court permitted Rowton, over defense objection,[4] to testify concerning this chemical

identification.

The Texas Court of Criminal Appeals has noted that the Texas Rules of Evidence require

a trial judge to make three separate inquiries, which must all be met before admitting expert

scientific testimony:

> "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance.

*Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006) (quoting from *Rodgers v. State*, 205

S.W.3d 525, 527 (Tex. Crim. App. 2006)). On appeal, Gill only challenges the qualifications of

Rowton. "Qualification is distinct from reliability and relevance and, therefore, should be

evaluated independently." *Id.*

At trial, the State argued the admissibility of an expert's testimony does not depend on

the expert's qualifications. The State claimed an expert's qualifications only affect the weight of

the evidence, not its admissibility. It is well established that an expert's qualifications determine

whether the expert testimony is admissible. An expert witness must have both a sufficient

specialized knowledge in a particular field, and that specialized knowledge "must be tailored to

---

[3]We note Rowton later testified this test determines whether the substance is cocaine, rather than just testing for whether a cocaine base may be present.

[4]We note the State argues Gill failed to preserve error. The record contains a lengthy three-page objection and request to "voir dire" the witness based on Rule 702. The trial court granted Gill a running objection. The issue has been preserved for our review. *See* TEX. R. APP. P. 33.1.

7

the specific area of expertise in which the expert desires to testify." *Id*. at 133; *see Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010); *Kessler v. State*, No. 06-10-00150-CR, 2011 Tex. App. LEXIS 606, at *4 (Tex. App.—Texarkana Jan. 28, 2011, no pet.) (mem. op., not designated for publication).[5] Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702. Further, Rule 702 "applies equally to all scientific evidence, not just novel scientific evidence." *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006). The trial court's decision to admit expert testimony is reviewed for abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995). The decision will be upheld unless it is outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009).

When the subject matter of the testimony requires expert testimony,[6] a police officer may not testify unless he has sufficient qualifications. The State made no effort to prove Rowton's qualifications. The record does not indicate whether Rowton has received any training in

---

[5] Although the unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[6] When testifying as to lay opinions, the admissibility of a police officer's testimony does not depend on his qualifications. Rule 701, which governs lay opinions provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

TEX. R. EVID. 701; *see Fairow v. State*, 943 S.W.2d 895, 900 (Tex. Crim. App. 1997) ("An opinion is rationally based on perception if it is an opinion that a reasonable person could draw under the circumstances."). However, Rowton was testifying concerning a chemical identification of traces of a substance on a defendant's clothes. Such testimony must be testified to by a qualified expert.

performing the field test at issue or even whether Rowton has performed this field test before.

The only evidence of Rowton's qualifications is that he has arrested "numerous people on alleged narcotic offenses" and that he knew the test equipment turned blue if cocaine was present. The Texas Court of Criminal Appeals has instructed that

> an appellate court should consider three criteria when determining whether a trial court abused its discretion in evaluating a witness's qualifications as an expert: (1) "is the field of expertise complex?"; (2) "how conclusive is the expert's opinion?"; and (3) "how central is the area of expertise to the resolution of the lawsuit?"

*Vela*, 209 S.W.3d at 131 (footnotes omitted).

The field of expertise—chemical identification of trace amounts of a controlled substance—is an extremely complex field. Chemical identification of a substance cannot be made simply by looking at a compound, because too many substances look exactly the same. All chemical identification requires an analysis, based on knowledge and experience, to identify the substance. Further, not all scientific tests are created equal and, in some tests, accuracy is sacrificed in the name of convenience. An expert is required to differentiate between the accurate tests and the inaccurate tests. In addition, the testimony at issue—identification of trace amounts of a substance—involves analytical chemistry, which is a specialty within the general field of chemistry. The fact that the identification involves trace amounts of the substance found on a suspect's clothing increases the complexity of the field of expertise even further. The first factor strongly favors a finding of an abuse of discretion.

The second factor examines whether an expert's conclusion is conclusive. The more conclusive the opinion, the more harm any errors would cause and, therefore, the expert's qualifications are more important. Rowton testified that the test he performed identified the trace

compounds as cocaine. Rowton's testimony did not qualify the identification with any mention of the accuracy of the test or otherwise express any doubt as to the identification.[7] There was no mention of the rate of false positives or the rate of false negatives in the test performed. Rowton expressed a conclusive opinion that the trace compounds on Gill's clothes were cocaine. The second factor strongly favors a finding of an abuse of discretion.

The last factor is the importance of the area of expertise to the resolution of the case. The State argues the expert testimony concerned a collateral issue—the affirmative links to the contraband. The affirmative links issue, though, was not a minor collateral issue. Whether sufficient affirmative links to the contraband existed was the sole disputed issue in this case.[8] The third factor is concerned with the evidence's importance to the "disputed issues." *Rodgers*, 205 S.W.3d at 528. "The more dispositive it is of the disputed issues, the more important the expert's qualifications are." *Id.* Because the evidence concerned the sole disputed issue in the case, the expert's qualifications were important. This factor strongly favors a finding of an abuse of discretion.

All three factors strongly favor a finding of an abuse of discretion. The State made no effort to prove the qualifications of Officer Rowton. Rowton testified concerning chemical identification, a field of complex expertise, of traces of cocaine on Gill's clothes. The State used this evidence to argue to the trial court that the cocaine discovered at the scene belonged to Gill.

---

[7]We note the State referred to the test as a "presumptive" test. Rowton, though, did not use this term.

[8]The record contains two laboratory reports establishing the baggies found at the scene contained cocaine and marihuana. When the State introduced the laboratory reports, the defense stated, "We have no objection. We've had a previous discussion about this, Judge." The defense's sole argument at trial was that the contraband was not linked to Gill.

10

Whether the cocaine belonged to Gill was the sole issue in dispute. The trial court abused its discretion in admitting Rowton's testimony concerning the "SIRCHIE Narco" test.

This opinion should not be interpreted as holding a police officer cannot qualify as an expert to testify concerning field tests. We note that an expert does not have to be qualified to testify concerning all three of the *Kelly* factors.[9] For example, a police officer who has received training in performing scientific tests may qualify to perform the test and to testify concerning whether the tests were properly performed. In most circumstances involving a "hard science," such as chemistry,[10] a scientist will be required to testify concerning the remaining two prongs: whether the underlying scientific theory is valid and whether the technique applying the theory is valid.[11] In this case, the State failed to present any evidence that Rowton was qualified to testify

---

[9]The proponent of scientific evidence must prove, by clear and convincing evidence, that the evidence is both relevant and reliable in order for the evidence to be admissible. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *But see Hall v. State*, 297 S.W.3d 294, 298 (Tex. Crim. App. 2009) (holding *Kelly* does not apply at pretrial suppression hearing, but declining to decide "what quantum or quality of information is necessary [to] establish the reliability" at pretrial hearing). To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573; *Scherl v. State*, 7 S.W.3d 650, 651–52 (Tex. App.—Texarkana 1999, pet. ref'd). "Under Kelly, a trial judge must, upon request, conduct a 'gatekeeping' hearing outside the presence of the jury to determine whether scientific evidence is sufficiently reliable and relevant to help the jury in reaching an accurate result." *Coble v. State*, 330 S.W.3d 253, 273 (Tex. Crim. App. 2010) (footnotes omitted). "The trial court's essential gatekeeping role is to ensure that evidence that is unreliable because it lacks a basis in sound scientific methodology is not admitted." *Id*. We wish to clarify that the *Kelly/Daubert* factors are "gate-keeping" issues. If the State fails to prove the scientific evidence is reliable, it cannot be admitted and cannot be considered for any purpose.

[10]This statement is not declaring a bright-line rule, but is intended merely as guidance. We further note that "soft sciences" such as psychology are subject to a more flexible analysis. *See Coble v. State*, 330 S.W.3d 253, 274 (Tex. Crim. App. 2010) (reaffirming *Nenno* standard); *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999).

[11]The underlying scientific theory and the technique applying the theory for a few techniques, such as the intoxilyzer and radar guns, have been statutorily or judicially recognized as valid. *See* TEX. TRANSP. CODE ANN. § 524.038 (West 2007); *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam); *Stevenson v. State*, 895 S.W.2d 694, 698–99 (Tex. Crim. App. 1995); *Mills v. State*, 99 S.W.3d 200, 202 (Tex. App.—Fort Worth 2002, pet. ref'd); *Tex. Dep't of Pub. Safety v. Jimenez*, 995 S.W.2d 834, 837–38 (Tex. App.—Austin 1999, no pet.). The parties have not directed us to any authority that the theory or technique of using this particular field test to identify

11

as an expert. There is no evidence Rowton was qualified to perform the test or testify concerning whether the test was properly performed. The admission of Rowton's testimony concerning the field test was error.

**The Error Was Harmless**

Having concluded the trial court erred in permitting Rowton to testify as an expert witness, we are faced with the issue of whether this error resulted in harm.

A violation of an evidentiary rule that results in the erroneous admission of evidence is not constitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Kessler*, 2011 Tex. App. LEXIS 606, at *8. When a nonconstitutional error is made during trial, it will be disregarded as harmless if the error did not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is implicated when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271. We consider the record as a whole and are not limited to the *Harris* factors when assessing harm for nonconstitutional errors. *Mason v. State*, 322 S.W.3d 251, 257 n.10 (Tex. Crim. App. 2010) (Rule 44.2(b) not limited by *Harris* factors).

---

trace chemicals on a suspect's clothes has been recognized as valid. Further, even when the first two criteria have been met by legislative finding or judicial fiat, the State is still required to prove the technique was properly applied on the occasion in question. *Reynolds v. State*, 204 S.W.3d 386, 391 (Tex. Crim. App. 2006); *see Hernandez v. State*, 116 S.W.3d 26, 30 (Tex. Crim. App. 2003) (per curiam) ("judicial notice on appeal cannot serve as the sole source of support for a bare trial court record concerning scientific reliability"). Gill's sole description of how he conducted the test was that he used a "cocaine wipe" and used "a different pad for each [article of clothing]." Even if State had presented some evidence that Officer Rowton was qualified to perform the test, the State failed to prove, by clear and convincing evidence, that the test was properly applied. Further, we note the Texas Court of Criminal Appeals has recently recognized the enzyme immunoassay technique as a scientifically reliable method to detect drugs in a blood sample. *See Somers v. State*, No. PD-0056-11, 2012 Tex. Crim. App. LEXIS 753 (Tex. Crim. App. June 6, 2012). The record before us does not establish whether the "SIRCHIE Narco" test is an enzyme immunoassay technique or whether such a technique can be used to detect trace chemicals on a suspect's clothing.

12

The State argues the error was harmless because a laboratory report prepared by a chemist was stipulated to by the defense and admitted elsewhere in the record. The report, though, concerned identification of a different substance. The report only concerned chemical identification of the substances in the baggies. The report did not address whether the trace chemicals on Gill's clothes were cocaine. Because the report concerns identification of the substances in the baggies, not the trace chemicals on Gill's clothes, the report does not cure the error.

The error, though, did not have a substantial and injurious influence on the verdict. We note this was a bench trial and the trial court noted he would consider Gill's objection in deciding what weight would be given to the testimony. The other affirmative links are sufficient to render the error harmless. As discussed above, Gill was in close proximity to the drugs, had possession of $1,414.00, had a tobacco wrapper in his hand, and later admitted to being a crack cocaine dealer. In *Motilla v. State*, the Texas Court of Criminal Appeals clarified that overwhelming evidence of guilt, while not determinative, is a factor that can also be considered. 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002). The affirmative links strongly link Gill to the cocaine, and we are confident that the trial court's error did not contribute to Gill's conviction or had no more than a slight effect. Gill's substantial rights were not affected, and the error was harmless.

**Modification of the Judgment**

During our review of the appeal, we noticed that the written judgment specifies that Gill was convicted under Section 481.115. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). Section 481.115 concerns possession of a controlled substance in Penalty Group 1 and

13

states that possession of less than four grams but more than one gram is a third-degree felony. *Id.* Gill, though, was charged and found guilty of the second-degree felony offense of possession of a controlled substance in Penalty Group 1 with the intent to deliver pursuant to Section 481.112. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112. We note the judgment correctly describes the offense as "POSSESSION WITH INTENT TO DELIVER CONTROLLED SUBSTANCE, NAMELY: COCAINE OF MORE THAN ONE GRAM BUT LESS THAN FOUR GRAMS, REPEAT OFFENDER" and correctly provides it is a second-degree felony enhanced by a prior felony conviction.

We have the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so." *Rhoten*, 299 S.W.3d at 356 (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, writ ref'd)); *see French*, 830 S.W.2d at 609. Accordingly, we modify the trial court's judgment to reflect the statute of Gill's conviction was "TEX. HEALTH & SAFETY CODE ANN. § 481.112."

**Conclusion**

The State presented legally sufficient evidence affirmatively linking Gill to the contraband. Although the trial court erred in admitting Officer Rowton's testimony concerning the "SIRCHIE Narco" test, the error did not affect Gill's substantial rights and, therefore, was harmless error.

14

We modify the trial court's judgment to reflect the correct statute number for the offense and affirm, as modified.


Bailey C. Moseley
Justice

Date Submitted:     June 5, 2012
Date Decided:       June 13, 2012

Do Not Publish

15