**Affirmed, as Modified, in Part, Reversed and Remanded, in Part, and Majority and Dissenting Opinions filed March 4, 2014.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-13-00039-CR

---

### JAMES MUSGROVE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 68992**

---

### M A J O R I T Y   O P I N I O N

In three issues, appellant James Musgrove challenges his felony convictions for two counts of assault on a public servant and one count of attempted escape.[1] We affirm the judgment of the trial court, as modified, with regard to appellant's assault convictions, and reverse the judgment as to appellant's attempted escape

---

[1] *See* Tex. Penal Code §§ 15.01, 22.01(b)(1), 38.06.

conviction for a new punishment trial.

## *Background*

While in custody of the Texas Department of Criminal Justice (TDCJ), appearing in a court on a matter not relevant to this appeal, appellant allegedly assaulted two correctional officers and attempted to escape. Appellant and the two officers were the only people in the courtroom at the time. Appellant and one officer, who was unarmed,[2] were at the counsel table when appellant allegedly showed the officer a piece of paper to distract him and punched him, momentarily stunning him. Appellant then ran to the other officer, who was near the door of the courtroom, and struggled with her in an attempt to take her pistol, which was secured in her holster. The first officer then joined in the struggle, and at some point, all three fell to the ground.[3] Within minutes, the first officer was able to secure appellant with assistance from a third officer who entered the courtroom to assist.

Appellant was indicted and tried for two counts of assault on a public servant and one count of attempted escape in the same courtroom where he allegedly committed these offenses. He represented himself. At the time, he was in TDCJ's custody serving sentences for other felony offenses. Appellant filed two pretrial motions complaining that the conditions of his confinement would prevent him from receiving a fair trial because TDCJ, among other things, allegedly (1) confiscated his legal work and files, writing instruments, envelopes, postage, items used for personal hygiene, and medications; (2) deprived him of sleep, food,

---

[2] TDCJ's safety protocol in the courtroom requires the correctional officer nearest to an inmate to be unarmed to reduce the chances of the inmate acquiring a firearm.

[3] When the first officer joined the struggle, appellant had a "scissor lock" with his legs wrapped around the second officer, and appellant had his hand on her pistol. Both of the officers and appellant were injured. At trial, appellant argued that he acted in self-defense.

water, showering, and shaving; and (3) housed him in a facility at a distance from the courthouse that doubled his transport time and contributed to his sleep deprivation.[4]

During pretrial matters, appellant again complained that TDCJ confiscated most of his legal files, including transcripts of testimony from state witnesses.[5] The trial court instructed the State's investigator to call the head warden at the unit where appellant was housed and "ask . . . if it's possible to . . . give [appellant his legal files] when he gets back today and he be allowed to bring [them] every day to court through this trial." Appellant responded, "[W]hen I return to the unit, . . . if they give me the property, that works great . . . but then . . . they order me to pack it and inventory it again at about 7:00 o'clock." He also renewed his objection to TDCJ's failure to allow him to shower or shave before trial. The trial court responded, "I'm not trying [TDCJ] on how they should or should not handle an inmate. What they do, I'm not going to interfere. I'm not going to set up a new set of rules for you or anything else. The rules are what the rules are." Appellant renewed these objections twice during trial, reiterating that he was denied access to legal materials after a certain time at night and was not allowed to shower or shave during the course of the three-day trial.

The trial court determined it would not be necessary to restrain appellant during trial but took several security precautions, which included requiring appellant's investigator or standby counsel (in lieu of appellant) to approach witnesses with exhibits or documents, requiring correctional officers to stand

_____

[4] At the time of trial, appellant was housed in a high security facility. He was classified as a violent offender and an escape risk due to his alleged commission of the above-referenced offenses.

[5] Appellant indicated the transcripts were the court reporter's record from his prior trial, during which appellant allegedly committed the offenses for which he was convicted in this case.

between appellant and the jury, and requiring appellant to stand behind a podium during closing arguments. With regard to approaching witnesses, appellant objected on the basis that the State should be required to follow the same procedure: "It's important that [the jury] not see me following a procedure that [the State's counsel] is not. So, if a document is being passed to the witness, I would simply ask [the State] to follow the same procedure." Appellant argued applying a different standard to him than the State would undermine the presumption of his innocence in front of the jury. Counsel for the State responded, "[O]ur position is there is nothing on record to indicate that . . . I'm violent . . . . And so, that doesn't mean we need to be treated the same, that I have to be hamstrung because of his past conduct."

The trial court overruled the objection, but stated,

> And it may be better since I'm going to explain that you have assistance of counsel and that you're representing yourself, that if counsel approached with the exhibit, the document, to show them to the witness, there is virtually no difference in what is going on. In essence, you have two attorneys and they got one.

Appellant objected to the trial court requiring correctional officers to step between him and the jury when the jury entered or exited the courtroom, as demonstrated in the following colloquy:

| [Appellant:] | Is it possible for me to move someplace where, you know, the [TDCJ] escorts aren't standing between me and everybody . . . when they come by? |
|---|---|
| THE COURT: | Absolutely. They're going to stands [sic] between you and the jury every time they come in and out. |
| [Appellant:] | Can I move someplace like behind the table or something? |

4

THE COURT: I don't care if you want to put [standby counsel] over there. You're on the corner. That doesn't bother me.

[Appellant:] Because right now as it's being done it's like a mad rush where the [TDCJ] people are running over to . . . quick[ly] surround me. It looks a little bit obvious.

[The State:] I want the record to be clear.

THE COURT: One, I don't think it looks obvious at all because they are getting their stuff together and the guards are merely taking one, maybe two, steps forward. . . . . [B]ut if you and [standby counsel] want to change seats, that's up to y'all.

[Appellant:] I think it would work better.

On the third day of trial, appellant requested to be treated similarly to the State's counsel during closing argument: "I . . . want the jury not to have a vast difference in perception between [the State's counsel] and me because this . . . goes to the heart of the presumption of innocence, particularly at this stage [during] the closing argument for guilt or innocence." The trial court stated, "I'm not going to limit the State's ability to argue a case because your history got you incarcerated," but agreed to let appellant stand behind a podium "6 to 8 feet, maybe 10, tops, from the jury," which was "3 or 4 feet" further away from the jury than the State's counsel was allowed to be. Appellant responded, "Well, that will help me look like a professional."

The jury found appellant guilty as to all three offenses, sentenced him to 20 years' imprisonment for each count of assault and 10 years' imprisonment for the attempted escape, and assessed a $10,000 fine for each offense. The trial court entered judgment ordering the three sentences to run concurrently. Appellant filed a motion for new trial, complaining, among other things, that he was deprived of a

fair trial because of (1) his limited access to legal materials and having to appear at trial unwashed and unshaven, (2) the placement of correctional officers between him and the jurors, and (3) the ability of the State to move freely about the courtroom when appellant could not. After an evidentiary hearing, the trial court denied the motion.

## *Discussion*

In three issues, appellant complains that the trial court violated his right to a fair trial, that the judgment against him reflects an incorrect offense level as to each count for which he was convicted, and that his conviction for attempted escape was improperly enhanced.

## I. Right to Fair Trial

In his first issue, appellant argues the trial court violated his right to a fair trial[6] by (1) allowing the State to confiscate his legal work and present him unwashed and unshaven for trial and (2) requiring appellant to adhere to different procedures than the State in front of the jury, thereby destroying the presumption of his innocence. The State argues appellant did not preserve these complaints for appellate review, and even if he had, the trial court was entitled to take precautions to ensure the safety of everyone in the courtroom. We first address preservation of error.

### A. Preservation of Error

To preserve error for appeal, a party is required to make a timely request, objection, or motion to the trial court and obtain an express or implied ruling on

---

[6] A fair trial is guaranteed by federal due process principles mandated by the Fourteenth Amendment of the United States Constitution and the due course of law rights identified in Article I, Section 19, of the Texas Constitution. *Benefield v. State*, 389 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

the request.  Tex. R. App. P. 33.1.  Appellant filed two pretrial motions complaining that TDCJ confiscated his legal work and files, which allegedly deprived him of the ability to prepare for trial.  Before trial, appellant again complained that TDCJ had confiscated his legal files.  The trial court instructed the State's investigator to call the TDCJ warden in charge of the unit where appellant was housed to ascertain whether appellant could have his legal files returned to him and could bring them to trial each day.  However, appellant responded that even when he was given access to his legal materials, they were confiscated each evening at 7:00 p.m.  The trial court stated it would not interfere with TDCJ's procedures regarding the handling of its inmates.  Appellant renewed his objection that he was denied access to legal materials twice during trial and in his motion for new trial.  Both objections were overruled, and the trial court denied the motion for new trial.  We conclude appellant preserved error on this objection by obtaining an adverse ruling from the trial court.

Appellant also complained during pretrial matters that TDCJ had not allowed him to shower or shave before trial.  He renewed these objections twice during trial and in his motion for new trial, complaining that he was never allowed to shower or shave during the course of the three-day trial.  The trial court overruled the objections.  Thus, appellant preserved error as to this complaint.

With regard to the court's ruling that appellant could not approach witnesses, appellant objected on the basis that the State was not required to follow the same procedure and applying a different procedure to appellant would undermine the presumption of his innocence.  The trial court overruled this objection.  Appellant also raised the issue in his motion for new trial.  Thus, appellant also preserved this issue for appeal.

Appellant did not object at trial to the trial court's requiring officers to

7

surround appellant when the jury entered or exited the courtroom. Instead, appellant asked if he could move so that the officers were not standing between him and the jury. The trial court allowed appellant to move further away from the jury by switching places with his standby counsel.[7] Appellant lodged no further objections during trial to his location in juxtaposition to the officers. We conclude that appellant has not preserved this complaint for appeal.

Appellant requested at trial to be treated similarly to the State's counsel during closing argument. The trial court allowed appellant to stand behind a podium "6 to 8 feet, maybe 10, tops, from the jury," whereas the State's counsel was allowed to approach the jury during argument. Appellant responded that he would "look like a professional" behind the podium and did not object to this arrangement. Thus, he has not preserved this complaint for appeal.

We turn to the merits of the complaints that appellant preserved for appeal.

### B. Preparation for Trial

Appellant complains that he was unable to adequately prepare for trial because his "legal work was confiscated for lengthy periods both before and during trial." A defendant is entitled to represent himself under the Sixth Amendment of the United States Constitution. *Faretta v. California*, 422 U.S. 806 (1975). Further, as the Supreme Court held in *Bounds v. State*, the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Johnson v. State*, 257 S.W.3d 778, 780 (Tex. App.—Texarkana 2008, pet. ref'd) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled on other*

---

[7] The trial court stated, "[I]f you and [standby counsel] want to change seats, that's up to ya'll." Appellant responded, "I think it would work better."

*grounds by Lewis v. Casey*, 518 U.S. 343 (1996)). However, the concomitant rights to self-representation and access to the courts are not coupled with an unfettered right of access to legal resources. *See, e.g., Dunn v. State*, 819 S.W.2d 510, 525 (Tex. Crim. App. 1991) (noting trial court with concerns about potential delays caused by an exaggerated use of library facility can deny the accused access to legal resources and holding pro se defendant was not entitled to paralegal assistance) (citing *Scarbrough v. State*, 777 S.W.2d 83, 93 (Tex. Crim. App. 1989) (holding trial court must admonish person asserting right of self-representation that he has no right to standby counsel)).

*Bounds* and progeny generally involve pro se defendants complaining of limited or no access to legal resources such as a law library. We find the facts of this case—in which appellant complains of limited access to his legal materials— to be sufficiently analogous. In *Lewis v. Casey*, the Supreme Court explained that *Bounds* "did not create an abstract, freestanding right to a law library" and "does not guarantee inmates the wherewithal to transform themselves into litigating engines." 518 U.S. at 351, 355. Further, the Court held that an inmate who claims to have suffered a deprivation of access to legal resources must show that he has suffered an actual injury. *Id*. at 351. Along these lines, many federal circuit courts, including the Fifth Circuit, have held that a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to legal resources in preparing his defense. *Johnson*, 257 S.W.3d at 780.[8]

---

[8] *See also United States v. Whittington*, No. 03–50150, 269 Fed. App'x 388 (5th Cir. 2008) ("[H]aving rejected the assistance of court-appointed counsel, [a defendant] ha[s] no constitutional right to access a law library in preparing the pro se defense of his criminal trial.") (quoting *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) (per curiam) (alterations in original)); *United States v. Smith*, 907 F.2d 42, 45 (6th Cir. 1990) (holding state not required to provide access to a law library to defendants wishing to represent themselves); *United States ex*

Here, appellant was provided with appointed counsel. He instead elected to proceed pro se. The State was required only to provide appointed counsel or access to legal resources. *See id.* at 781. Once appellant rejected the offer of appointed counsel and elected to represent himself, the State was not required to provide appellant access to legal materials to prepare his defense. *See id.* Regardless, the trial court instructed appointed counsel to assist as standby counsel. Thus, appellant had standby counsel as a ready resource, and it is clear from the record that appellant took advantage of that opportunity.[9]

Moreover, appellant has not demonstrated an actual injury attributable to a lack of time or opportunity to prepare for trial. Appellant contends only that his "legal work was confiscated for lengthy periods both before and after trial." Appellant does not state how much more time he needed, requested, or was refused to prepare for trial.[10] Appellant has not demonstrated that he was deprived of a fair trial due to his inability to have unfettered access to his legal materials.

---

*rel. George v. Lane*, 718 F.2d 226, 233 (7th Cir. 1983) (holding state was not required to offer a defendant law library access once it offered the defendant assistance of counsel, which the defendant declined); *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982) (holding prisoner's Sixth Amendment right to self-representation does not include right to conduct research at government's expense); *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978) (holding obligation to provide access to courts was satisfied by offering defendant the assistance of counsel).

[9] Standby counsel assisted appellant with subpoenaing witnesses and reviewing the State's case file, among other things.

[10] Appellant stated during pretrial matters, "[W]hen I return to the unit . . . if they give me the property, that works great. [B]ut then that next night they . . . order me to pack it an inventory it again at about 7 o'clock." On the second day of trial, appellant told the trial court, "[A]t approximately 8:30 last night I arrived at the unit. Approximately 10:00 p.m. legal work was provided. Approximately 3:00 a.m. legal work was taken . . . . I was returned to the Court and at 7:30 a.m. legal work was returned." On the last day of trial, appellant stated, "Last night I was not allowed access to any of the legal work left in the unit. I returned to court at 7:00 o'clock this morning. Legal work was returned." These objections do not indicate how much more time appellant needed, requested, or was refused to prepare for trial. They instead show appellant had access to his legal materials, albeit not unfettered.

10

## C. Appellant's Physical Appearance at Trial

Appellant complains that he was not allowed to shower or shave during the course of the three-day trial and asserts this deprived him of a fair trial by eroding the jury's perception of his presumed innocence. In support of this argument, Appellant cites cases holding it is unfair to try a defendant in prison clothing or while he is shackled.[11] However, the inability to shower and shave, by itself, while possibly portraying an unprofessional appearance, would not badge someone as a criminal in the jury's eyes in the same way as wearing a prison uniform or being shackled. *See United States v. Casey*, 540 F.2d 811, 816-17 (5th Cir. 1976) (finding, "[r]egardless of the merits," any prejudice arising from denial of continuance for defendant to shower and change clothes[12] was harmless and distinguishing case "[a]s to the merits," from those holding it is unfair to try a defendant in prison garb, because "no constitutional violation occurs so long as [the defendant's] dress does not badge him as a criminal, in the jury's eyes, as is the case with prison uniforms").

Moreover, the record does not reflect that appellant looked disheveled, unkempt, or unclean in front of the jury. He was wearing civilian clothes, and the State's counsel described appellant's beard as a "5 o'clock shadow."[13] The record

---

[11] *See Estelle v. Williams*, 425 U.S. 501, 505 (1976) ("The defendant's [jail] clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play."); *Oliver v. State*, 999 S.W.2d 596, 599 (Tex. App.— Houston [14th Dist.] 1999, pet. ref'd) ("If the presumption of innocence is to be meaningfully embraced, a defendant must not be presented to the jury in physical restraints, jail clothing or other indicia of guilt.").

[12] The trial court described defendant as "dressed in light green polo shirt and trousers" and "not in as bad shape as you say he is in." *United States v. Casey*, 540 F.2d 811, 816 n.16 (5th Cir. 1976).

[13] The State's counsel stated, "I would like to put on the record . . . , Mr. Musgrove does have . . . a 5:00 o'clock shadow or a very short little bit, but I think he looks presentable. I don't think he looks like a street person." The trial court also noted appellant "had a clean shirt on

does not indicate otherwise.[14] We are unable to conclude on this record that appellant's inability to shower and shave adversely affected his appearance before the jury to an extent that would deprive him of a fair trial. *See Bell v. State*, No. PD-0087-12, 2013 WL 5221060, at *4 (Tex. Crim. App. Sept. 18, 2013) (refusing to conclude that it was reasonably probable that jury heard rattling of defendant's shackle chain: such conclusion would have been purely speculative based on the record).

## D. Inconsistent Procedures for Approaching Witnesses

Appellant complains that he was not allowed to approach witnesses with documents or exhibits, while the State's counsel "was permitted to move through the courtroom freely." Appellant contends this disparate treatment "convey[ed] the impression that [appellant] is dangerous," thereby encouraging the jury to conclude that appellant was guilty of the charged offenses.

The trial court's decision to require the defendant to use standby counsel to approach witnesses was within its discretion. *See Martinez v. State*, 644 S.W.2d 104, 111 (Tex. App.—San Antonio 1982, no pet.) ("The trial judge has broad discretion to manage the trial and to deal with the many unexpected situations which arise at trial, therefore the reviewing court will be reluctant to interfere absent a clear showing of abuse of discretion."); *see also Johnson v. State*, 583 S.W.2d 399, 405 (Tex. Crim. App. 1979) ("A trial judge necessarily has broad discretion to deal with the many unexpected situations which arise during trial."); *Shaver v. State*, 306 S.W.2d 128, 130 (Tex. Crim. App. 1957) ("The trial judge is vested with wide discretion as to the conduct of the trial in matters such as the

each day."

[14] At the hearing on appellant's motion for new trial, appellant disputed the characterization of his unshaven face as a 5 o'clock shadow, but admitted that he had not requested a picture of his beard at trial to be included in the record.

seating arrangement, and it rests upon the appellant, in order to complain upon appeal in regard to such, to show an abuse of such discretion."). Our role is not to second-guess the trial court's discretion in controlling the courtroom and ensuring the safety of the litigants, participants, and witnesses in attendance. *Bell v. State*, 356 S.W.3d 528, 536 (Tex. App.—Texarkana 2011), *aff'd*, No. PD-0087-12, 2013 WL 5221060 (Tex. Crim. App. Sept. 13, 2013). If a criminal defendant has acted in a manner providing justification for restraints, it is well within the trial court's sound discretion to order him restrained during trial. *Id*. However, a trial court abuses its discretion when it restrains a criminal defendant without setting forth reasons on the record, specific to that defendant, supporting its decision to restrain the defendant.[15] *Id*.

Here, appellant was not restrained in any traditional manner, such as by shackling. He merely was precluded from approaching the witnesses. The court articulated, outside the presence of the jury, two reasons for imposing this restriction: (1) the court was concerned for the jury's safety and the security of the courtroom based on appellant's history of allegedly committing violent crimes and (2) the courtroom was small.[16] The trial court made this decision in light of the following facts: (1) appellant was accused of assaulting two officers and attempting to escape, (2) the case was being tried in the courtroom where the offenses purportedly occurred, (3) appellant previously had been convicted of violent crimes, and (4) TDCJ considered appellant to be a high risk for escape and

---

[15] The use of restraints such as shackles cannot be justified based on a general appeal to the need for courtroom security or simple reference to the severity of the charged offense. *Bell*, 356 at 535. Thus, shackling is called for only in rare circumstances, and the record must detail the grounds for such action. *Id*. at 536.

[16] Addressing appellant, the trial court noted, "I have a limited amount of space here. I can't keep a bunch of people up here at the bench in a crowded scenario, with some of the history that I understand that you have, and expect us to be secure."

13

was housing him in a high security unit.

There is no indication that the jury's perception of appellant was influenced by this procedure. The trial court in fact noted the procedure might be beneficial for appellant:

> [I]t may be better since I'm going to explain that you have assistance of counsel and that you're representing yourself, that if counsel approaches with the exhibit, the document, to show them to the witness, there is virtually no difference in what is going on. In essence, you have two attorneys and [the State has] one.

The trial court also explained to the jury that appellant was representing himself with assistance from counsel.

We conclude this procedure was an unobtrusive means to keep the courtroom secure and the proceedings orderly. There is no indication on this record that the jury had a basis to perceive appellant any differently than the State based on this procedure. On this record, we cannot conclude that the trial court abused its discretion in preventing appellant, but not the State, from approaching witnesses during trial. *See, e.g., Ruckman v. State*, 109 S.W.3d 524, 532 (Tex. App.—Tyler 2000, pet. ref'd) (holding trial court did not abuse discretion in allowing State's counsel to wear lapel pin in support of children when defense counsel did not wear one).

We overrule appellant's first issue.

## II.     Improper Offense Levels and Range of Punishment

We discuss appellant's second and third issues together, because they both complain of errors in the trial court's judgment with regard to the offense levels at which appellant was convicted and the proper ranges of punishment. As set forth below, we modify the judgment for the two assault counts to reflect the proper

offense levels and reverse the judgment for attempted escape for a new punishment trial.

## A. Offense Level for Assaults

Appellant argues the trial court erroneously rendered judgment against him for two counts of assault on a public servant as second-degree felonies when the judgment should reflect that these were third-degree felonies. The State agrees.

The jury found appellant guilty of two counts of assault of a public servant, which is a third-degree felony. *See* Tex. Penal Code § 22.01(a)-(b)(1). The trial court properly enhanced the range of appellant's punishment as to these convictions based on appellant's prior convictions, but erroneously reflected in the judgment a second-degree offense. *See id*. § 12.42(a).[17] Although Penal Code section 12.42 increases the range of punishment applicable to the primary offense, it does not increase the severity level or grade of the primary offense. *Ford v. State*, 334 S.W.3d 230, 234 (Tex. Crim. App. 2011). Thus, the trial court erred in entering judgment against appellant on his assault convictions as second-degree felonies, and the judgment should reflect that appellant was convicted of two counts of assault on a public officer as third-degree felonies. We modify the judgment accordingly. *See Garza v. State*, 298 S.W.3d 837, 845 (Tex. App.—Amarillo 2009, no pet.) (modifying judgment to reflect correct offense level).

## B. Offense Level for Attempted Escape

Appellant further argues that the trial court erroneously rendered judgment against him for attempted escape as a third-degree felony while the jury charge authorized the jury only to find appellant guilty of attempted escape as a state-jail felony. The State, argues, to the contrary, that the jury charge authorized the jury

---

[17] The enhanced punishment was in the equivalent range for second-degree felonies.

15

to find appellant guilty of attempted escape as either a second- or third-degree felony.

A person commits escape if he escapes from custody when, as relevant here, he is under arrest for, lawfully detained for, charged with, or convicted of an offense. Tex. Penal Code § 38.06(a)(1). Escape is a first-degree felony if the offender "uses or threatens to use a deadly weapon," a second-degree felony if the offender "causes bodily injury," or a third-degree felony if the offender "is under arrest for, charged with, or convicted of a felony." *Id*. § 38.06(c)-(e). An attempt reduces the offense category one degree lower than the offense attempted. *Id*. § 15.01(d).

The jury charge includes the following instruction: "Our law provides that a person commits the offense of escape if he escapes from custody when he is convicted of a felony offense." The charge, consistent with the indictment, further authorized the jury to find appellant guilty of attempted escape if it found that appellant

> with the specific intent to commit the offense of escape from the custody of [two correctional officers] tried to gain control of a firearm which was in the possession of [one of the officers], which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.[18]

Appellant argues the jury found appellant guilty of attempted escape as a state-jail felony because the charge does not include the element of "causing bodily injury," which would have been necessary to convict appellant of attempted escape as a third-degree felony. The trial judge is required to deliver to the jury a "written charge distinctly setting forth the law applicable to the case." Tex. Code Crim.

---

[18] This language in the jury charge tracks the language in the indictment. The indictment does not include the definition of escape that was included in the jury charge.

16

Proc. art. 36.14; *Margraves v. State*, 56 S.W.3d 673, 681 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The purpose of the charge is to inform the jury of the applicable law and to guide it in applying the law to the facts of the case. *Id*. A charge that adequately protects an accused's rights, although not applying the law to the facts as preferred by him, is sufficient if the jury could have acquitted him under it, had they believed his version of the facts. *Id*. A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue. *Id*.

The State argues that the jury found appellant guilty of attempted escape as a second-degree felony, which, as relevant here, would require a finding that appellant "use[d] or threaten[ed] to use a deadly weapon." *See* Tex. Penal Code §§ 15.01(d), 38.06(e)(2). Here, the jury charge does not track the statutory language applicable to second-degree attempted escape because it does not include the language "uses or threatens to use a deadly weapon." *See* Tex. Penal Code § 38.06(e)(2). However, the State argues that the jury's finding that appellant "tried to gain control of a firearm" is equivalent to a finding that he "use[d] or threaten[ed] to use a deadly weapon." We disagree.

In construing a jury charge, we examine the charge as a whole instead of a series of isolated and unrelated statements. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). Even if we were to hold that "trying to gain control of a firearm" is equivalent to "us[ing] or threaten[ing] to use a deadly weapon," we would have to ignore the definition of "escape" in the charge, which required the jury to find that appellant was in custody for a felony offense when he attempted to escape. This definition is consistent with the statutory definition of attempted escape as a state-jail felony.[19] Moreover, during the charge conference, the State's

---

[19] Attempted escape is a state-jail felony when the offender "is under arrest for, charged with, or convicted of a felony." Tex. Penal Code §§ 15.01(d), 38.06(c)(1).

counsel conceded that he did not seek a finding that appellant used or threatened to use a deadly weapon in the commission of the offense.[20] The trial court accordingly did not enter a deadly weapon affirmative finding.[21] We conclude the jury charge does not include a finding that appellant used or threatened to use a deadly weapon, as required to convict appellant of attempted escape as a second-degree felony.

The State alternatively argues that the trial court correctly entered judgment against appellant for attempted escape as a third-degree felony because the jury found that during "the criminal episode, [a]ppellant caused bodily injury to two public servants." Although the jury found appellant guilty of two counts of assault on a public servant and found that appellant "cause[d] bodily injury" to each officer, the jury did not find that appellant did so "to effect his escape," as required for attempted escape to be a third-degree felony. Tex. Penal Code §§ 15.01(d), 38.06(d) (assigning offense level when "the actor *to effect his escape* causes bodily injury") (emphasis added). Thus, the jury's findings of guilt as to assault do not support a conviction for attempted escape as a third-degree felony.

---

[20] THE COURT: You did not allege deadly weapon in . . . Counts One and Two [the assaults]; so, I would think that's the simple charge. . . . Your Count 3 is escape that you allege. And I don't have it in front of me.

[State's Counsel]: I did not. . . . Well, I alleged that he tried to gain possession of the gun. I didn't allege—

THE COURT: But it's not—you—I think you're back to a simple assault.

[State's Counsel]: Right.

[21] In a jury trial, a trial court is authorized to enter a deadly weapon affirmative finding in three situations: when the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically pleaded as such using "deadly weapon" nomenclature in the indictment; (2) found guilt as alleged in the indictment but, though not specifically pleaded as a deadly weapon, the weapon pleaded is per se a deadly weapon; or (3) affirmatively answered a special issue on deadly weapon use. *Sanders v. State*, 25 S.W.3d 854, 856 (Tex. App.—Houston [14th Dist.] 2000), *pet. dism'd*, 56 S.W.3d 52 (Tex. Crim. App. 2001).

18

Accordingly, we conclude the trial court erred in rendering judgment against appellant for attempted escape as a third-degree felony. We discuss the proper disposition of the case below.

### C. Enhancement

In his third issue, appellant argues his sentence for attempted escape was improperly enhanced by the same prior conviction that was used as an essential element of the charged offense. We agree.

The use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction in the same indictment for enhancement purposes. *Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986). As set forth above, the jury found that appellant was "in custody for a felony offense" when he attempted to escape. Being "under arrest for, charged with, or convicted of a *felony* at the time" one commits the offense is an essential element of attempted escape as a state-jail felony. *See* Tex. Penal Code §§ 15.01(d), 38.06(c)(1) (emphasis added); *see also McWilliams v. State*, 782 S.W.2d 871, 874-75 (Tex. Crim. App. 1990). During the guilt-innocence phase of the trial, the State presented evidence only of appellant's 1992 felony conviction for burglary of a habitation. The State improperly relied on the same prior conviction to enhance appellant's punishment to the applicable range for a third-degree offense.[22] *See*

---

[22] To establish a prior conviction for sentence enhancement purposes, the State must prove beyond a reasonable doubt that the prior conviction exists and the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). When the State seeks to enhance a defendant's sentence for the primary offense by alleging he has a prior conviction and there is no indication in the record that the defendant pleaded "true," the factfinder must decide whether the State met its burden by entering a finding that the enhancement allegation is either true or not true. *Jordan v. State*, 256 S.W.3d 286, 291 (Tex.Crim.App.2008). Appellant pleaded "true" to the burglary conviction, but did not plead "true" to any other prior convictions, and the jury did not make an affirmative finding that appellant had other prior convictions.

*McWilliams*, 782 S.W.2d at 875-76. The jury sentenced appellant to ten years' imprisonment; whereas, the range of punishment for a state-jail felony is 180 days' to two years' jail time. Tex. Penal Code § 12.35(a). A sentence outside the prescribed punishment range is void and illegal. *Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). When reversible error occurs in the punishment phase of trial, the appellant is entitled to a new punishment trial. Tex. Code Crim. Proc. art. 44.29(b); *see also Baker*, 278 S.W.3d at 927.

We sustain appellant's third issue. We reverse the trial court's judgment as to appellant's conviction for attempted escape and remand that conviction for a new punishment trial.

### *Conclusion*

We affirm, as modified, the judgment of the trial court with regard to appellant's assault convictions. We modify the judgment to provide that appellant was convicted of two third-degree felony counts of assault on a public servant. We reverse the judgment as to appellant's attempted escape conviction and remand that conviction for a new punishment trial.


/s/ Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison. (Frost, CJ., files dissent).
Publish — TEX. R. APP. P. 47.2(b).