**Affirmed and Memorandum Opinion filed October 29, 2019.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-17-00923-CR**

---

**JUSTIN ROSS HOLZWORTH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 2139379**

---

## M E M O R A N D U M   O P I N I O N

Appellant Justin Ross Holzworth appeals his conviction for resisting a search by someone he knew to be a peace officer. A jury found appellant guilty, and the trial court sentenced him to one year in jail, suspended the sentence, and placed him on community supervision for one year. In four issues, appellant contends that the evidence was legally insufficient to prove that (1) appellant resisted a search, (2) the deputy in question was engaged in a search, and (3) appellant struck the deputy's hand as charged, and that (4) the trial court erred in

refusing a jury instruction. We affirm.

## *Background*

**Deputy Berry's testimony.** Harris County Constable's Deputy Glenn Berry testified that around 11:00 p.m. on February 28, 2017, he responded to a call about a suspicious vehicle, specifically a white truck, on a street called Spurlin Trail.[1] Berry said that the neighborhood adjacent to Spurlin had experienced a lot of vehicle break-ins. When he arrived on Spurlin, Berry observed appellant sitting in a white truck on the side of the road. Berry made a U-turn and drove back toward the truck.

At that point, appellant got out of the truck and bent down to tie his shoe. Berry said that he wanted to contact appellant to see if he needed assistance and ask if he lived in the neighborhood. But when Berry pulled to the side of the road, appellant started jogging away. Berry said that he became suspicious because appellant seemed to be avoiding him and was not wearing jogging clothes but was wearing "jeans and regular clothes."

Berry called twice for appellant to come talk to him, but appellant ignored him. When Berry called a third time, louder, for appellant to come talk to him, appellant stopped and turned and indicated that he wanted Berry to come to him to talk. For safety reasons, Berry does not go to people in such situations but requires them to walk to him so that he can observe them because he doesn't know what they may be hiding. Eventually, appellant started walking towards Berry. Appellant seemed frustrated and said that Berry was harassing him, did not have probable cause to make contact, and did not have the right to talk to appellant.

Berry said he explained to appellant that it was no big deal, they had had a

---

[1] We note that appellant did not file a motion to suppress evidence in this case.

call about a suspicious vehicle, and Berry just wanted to identify appellant and send him on his way. Appellant took his phone out, and Berry thought that he then started recording video of their encounter but later learned it was only an audio recording. Berry confirmed that State's exhibit 6 was an accurate audio recording of the encounter.

Berry noticed that appellant "had a lot of stuff in his pockets," which made Berry concerned that appellant might have a weapon. Berry testified: "I told him I wanted to do a pat-down, just make sure he did not have weapons on him. Basically that's what I told him." Berry wanted appellant to step in front of Berry's patrol car so that Berry could use the car's video camera to record the process. Berry said that when he asked appellant to step in front of the car, he touched appellant on his back; as Berry put it: "I went through a light touch." Appellant then knocked Berry's hand away. Berry told appellant that he was about to get himself "in some trouble that he didn't have to be in." Berry said that he asked appellant again to step over to the car for a pat down and again appellant knocked his hand away. Berry then called for backup, grabbed appellant to control his arms, and took appellant to the ground. Throughout, appellant was very vocal, claiming harassment.

After Berry took appellant to the ground, other officers arrived to assist. According to Berry, appellant continued to resist "the whole time" as Berry continued to try to pat him down to see what was in his pockets. On cross-examination, Berry stated that no weapons were found on appellant and there was no evidence that appellant had been selling drugs.

**Appellant's testimony.** Appellant testified that he decided to go for a jog after watching a basketball game with his father that ended around 10:00 p.m. He

3

said at the time, he was wearing white shorts, a shirt, and running shoes.[2] He said that Spurlin Trail was about ten minutes from his home and had a long stretch of concrete for running. After he arrived, he stayed in the truck for about ten minutes. Shortly after Berry drove past him, appellant got out and tied his shoe. Appellant said that he had jogged about ten to twenty feet past Berry's patrol car when Berry told him to come back. Appellant said that he took about ten more steps so that he could start his phone recording. Appellant asserted that no conversation occurred between the two of them that was not captured on the recording.

Appellant said that Berry asked to talk and told him that they had received a call. Appellant acknowledged that he was agitated during the encounter because he just wanted to jog. He asked Berry for the call slip number and to speak to Berry's supervisor. Berry asked appellant to step toward the patrol car and tried to put his hand on appellant's back, but appellant moved away and said, "Don't touch me." Appellant said that Berry then started "grabbing," "pawing," or "scratching" him. Appellant said that he dropped a couple of feet behind Berry as they were walking toward the car, but appellant denied knocking Berry's hand away at any point. Appellant testified that Berry did not say anything about a pat down or a pat down for weapons.

Appellant acknowledged having several things in his pockets, including a small hard drive, car keys, and car parts. He said that after Berry said something into his walkie-talkie, Berry grabbed appellant and threw him to the ground. Appellant said that before Berry threw him to the ground, Berry had blocked appellant from reaching the patrol car. Appellant denied touching Berry.

**The audio recording.** The audio recording taken with appellant's phone

---

[2] Appellant's father also testified briefly that appellant left for a jog after watching a basketball game and that appellant usually wore running clothes when he jogged.

4

was also played for the jury. The recording begins with appellant telling Berry that he is recording their conversation and asking Berry his name. Berry responded and told appellant, "I need you to step to my vehicle." Appellant said, "Don't touch me," and then asked, "For what reason?" Berry responded that they had received some calls about appellant. Appellant said that he wanted the call slip number and to speak to Berry's supervisor. Berry said that his supervisor was on the way, and he instructed appellant to "step to the front." Appellant again said, "Don't touch me," and repeatedly asked, "What have I done?" Berry said, "I'm not trying to touch you, I'm trying to . . . ," and he again told appellant to walk to the patrol car.[3] Berry said, "Turn around. . . . We're not going to go through this." Appellant said he was calling his father, then said he was calling his lawyer. He then repeatedly said, "Get off me," and repeatedly asked what he had done and said, "Do not touch me."

The recording next contains sounds of a struggle along with what appears to be the sound of one handcuff closing. Appellant said, "What are you doing?" and Berry responded, "Turn around. Get on the ground. Put your hands behind your back." Other officers arrived on the scene, and at some point, appellant said, "What probable cause?" To which, Berry replied, "I don't need probable cause to frisk you."

An officer can be heard telling appellant to drop his phone. Appellant screams in apparent pain and says, "Let go of my hand. . . . This is illegal." It should be noted that at times on the recording, Berry and appellant talk over each other. It is also easier to hear appellant on the recording, probably because he was closer to his phone than Berry was.

---

[3] It is not entirely clear from the recording whether Berry finished saying what he was trying to do or whether he stopped because appellant was talking over him.

## *Sufficiency of the Evidence*

**Standards of review.** In his first three issues, appellant challenges the sufficiency of the evidence to support his conviction. In reviewing evidentiary sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

**Resisting a search.** Texas Penal Code section 38.03 criminalizes resisting an arrest, a search, or transportation by a peace officer. Tex. Penal Code § 38.03(a); *Crofton v. State*, 541 S.W.3d 376, 379 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Section 38.03(a) states in full:

> A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

The section creates just one offense that can be committed in three different ways; it does not create three separate offenses. *E.g., Hartis v. State*, 183 S.W.3d 793,

797–99 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Finster v. State*, 152 S.W.3d 215, 218–19 (Tex. App.—Dallas 2004, no pet.). The essence of the crime is the use of force against an officer. *See* Tex. Penal Code § 38.03(a); *Finley v. State*, 484 S.W.3d 926, 927–28 (Tex. Crim. App. 2016); *see also Pyykola v. State*, 814 S.W.2d 462, 464 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ("[T]here is danger inherent in the defendant's use of force, and the law is intended to discourage that use of force."). The phrase "'using force against the peace officer or another' means 'violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another.'" *Finley*, 484 S.W.3d at 928 (quoting Tex. Penal Code § 38.03(a) and *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014)). It is no defense to prosecution under the section that an arrest or search was illegal. Tex. Penal Code § 38.03(b).

The information in this case specifically alleged that "on or about February 28, 2017, [appellant] did then and there unlawfully intentionally prevent, G. Berry a person he knows is a peace officer from effecting a search of [appellant] by using force against G. Berry, namely by striking G. Berry's arm with his hand." (Capitalization omitted). In his first three issues, appellant contends that the evidence is insufficient to prove that (1) appellant intentionally resisted a search, (2) Berry was engaged in a search at the time of the alleged resistance, and (3) appellant struck Berry's arm.

**Appellant resisted a search.** We will discuss appellant's first two issues together. In his first issue, appellant focuses on the evidence of what he knew and intended. Appellant argues that at the time he allegedly knocked Berry's hand away, he did not know or have notice that Berry was attempting to conduct a search. Appellant insists that nothing on the recording indicates that he had notice

7

a search was about to occur or was in the process of occurring and Berry's putting his hand on appellant's back also would have provided no notice of a search. He further adds that the jury could not have reasonably believed Berry's testimony to the extent it contradicted the recording. In his second issue, appellant concentrates more fully on Officer Berry's intentions and actions. Specifically, appellant asserts that although Berry testified he intended to perform a search of appellant's person for weapons, there was no evidence that Berry was acting on that intent when appellant allegedly knocked Berry's hand away.

Underpinning appellant's arguments under his first issue is his assertion that in order to be convicted of resisting a search, a defendant must have known or had notice that a search was occurring and specifically intended to prevent or obstruct the search. Appellant does not cite any cases that directly support his position, and this is not how Texas courts typically analyze section 38.03 cases.[4] The vast majority of section 38.03 cases involve resistance to an arrest not a search, but because resisting arrest and resisting search are simply different methods for committing one offense, *see Hartis*, 183 S.W.3d at 797–99, the analysis should be largely the same.

We first note that in a section 38.03 prosecution, the State is not required to

---

[4] Appellant cites two cases in which the defendants argued either that they personally did not know that the officer was effecting an arrest, *Munguia v. State*, No. 11-16-00009-CR, 2017 WL 6803391 (Tex. App.—Eastland Dec. 29, 2017, no pet) (mem. op., not designated for publication), or that a reasonable person would not have known that the officer was attempting to effect an arrest, *Latham v. State*, 128 S.W.3d 325, 328 (Tex. App.—Tyler 2004, no pet.). In neither case, however, did the court actually examine whether the defendant him or herself knew that the officer was effecting an arrest. In *Munguia*, the defendant argued that she did not know an arrest was occurring, but the court analyzed instead whether the officer intended to arrest her at the time she resisted and whether the officer took some action pursuant to that intent. 2017 WL 6803391, at *3. In *Latham*, the court examined whether the officer was effecting an arrest, as opposed to a detention, at the time of the alleged resistance, in part by considering whether a reasonable person would have believed he was not free to leave. 128 S.W.3d at 329–30. Neither case supports appellant's position here.

8

show that the officer announced his or her intention to arrest, search, or transport the defendant. *See White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. 1980); *see also Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.) ("[T]he process is not dependent upon the officer verbalizing his intention . . . .").[5] The State must show that the officer had a preexisting intent to arrest, search, or transport, coupled with some action taken pursuant to that intent. *See Munguia v. State*, No. 11-16-00009-CR, 2017 WL 6803391, at *3 (Tex. App.—Eastland Dec. 29, 2017, no pet) (mem. op., not designated for publication); *Curry v. State*, No. 06-14-00139-CR, 2015 WL 1869484, at *2 (Tex. App.—Texarkana Apr. 24, 2015, no pet.) (mem. op., not designated for publication); *Latham*, 128 S.W.3d at 329; *Bruno v. State*, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.). Courts also often utilize the reasonable person standard in section 38.03 cases and ask whether the evidence supports the conclusion that a reasonable person would have known that an arrest, search, or transportation was in process at the time the defendant used force against the officer. *See, e.g., Curry*, 2015 WL 1869484, at *2; *Latham*, 128 S.W.3d at 329–30.

Appellant's argument under his second issue that he lacked notice of a search can be considered a challenge to the evidence regarding the requirement that an officer take some action pursuant to an intent to search. Specifically, appellant asserts that although Berry testified that he intended to perform a search of appellant's person for weapons and explained why that was necessary, there was no evidence that Berry had begun any action pursuant to that intent by the time

---

[5] Resisting cases thereby stand in contrast to evading arrest cases in which the State must prove that the defendant knew an officer was attempting to arrest or detain the defendant. *See* Tex. Penal Code § 38.04; *Smith v. State*, 483 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A person commits a crime under Section 38.04 if he knows a police officer is attempting to arrest or detain him but nevertheless refuses to yield to a police show of authority.").

appellant allegedly knocked Berry's hand away. As appellant emphasizes, although Berry testified that he told appellant he wanted to conduct a pat-down search to make sure appellant did not have any weapons, at no point on the audio recording does Berry clearly and audibly state that he intends to search appellant.[6]

Berry also testified that he directed appellant to the front of his patrol car so that the search would be captured on the car's video, and the recording clearly supports that Berry directed appellant to the front of the car. Berry can also be heard on the recording telling appellant, "Turn around. . . . We're not going to go through this." Berry said that around that time, he "went through a light touch" on appellant's back. Appellant himself described Berry's touch alternatively as "grabbing," "pawing," and "scratching." Berry testified that it was when he "went through a light touch" that appellant knocked his hand away for the first time. Shortly afterwards, appellant knocked Berry's hand away for a second time.

The jury could have reasonably interpreted the testimony that Berry directed appellant to the front of his car and began touching his back in a pawing or grabbing fashion as implying Berry had begun to search appellant's person for weapons. In other words, viewing this evidence in the light most favorable to the verdict, it demonstrates that Berry intended to search appellant and had taken some action pursuant to that intent and a reasonable person in appellant's position would have known that a search was underway. *See Whatley*, 445 S.W.3d at 166; *Latham*, 128 S.W.3d at 329; *Bruno*, 922 S.W.2d at 294. Accordingly, appellant's arguments under his first two issues are without merit, and those issues are overruled.

_____

[6] It must be acknowledged, however, that some of Berry's statements on the recording are inaudible, largely because he and appellant talked over each other at numerous points and appellant's voice is louder on the recording, probably due to his proximity to the microphone. Moreover, as stated above, there is no requirement in section 38.03 cases that the officer had to have announced his or her intention. *See White*, 601 S.W.2d at 366; *Latham*, 128 S.W.3d at 329.

**Variance.** In his third issue, appellant contends that there is a material variance between the allegations in the information and the proof at trial. Specifically, appellant asserts that while the information alleged he struck Berry's arm, Berry testified that appellant struck his hand.

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). When an evidentiary sufficiency claim is based on an alleged variance between the information and the evidence, we consider the materiality of the variance rather than reviewing the evidence under the traditional sufficiency standards of review. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). A variance only renders the evidence insufficient when it is material. *Id*. A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject the defendant to the risk of being prosecuted twice for the same offense. *Id*. The burden of demonstrating the materiality of a variance rests with the defendant. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

Without offering cogent analysis, appellant asserts that the alleged variance in this case both deprived him of notice of the charges and subjected him to the risk of being prosecuted twice. Appellant simply posits that he could not adequately prepare for trial and he was at risk for being charged with resisting arrest from the same incident.

When an alleged variance concerns non-statutory allegations, Texas courts "tolerate 'little mistakes' that do not prejudice the defendant's substantial rights but [do] not tolerate a variance that really amounts to a failure to prove the offense alleged[, i.e., that is] so great that the proof at trial 'shows an entirely different

11

offense' than what was alleged in the charging instrument." *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012) (quoting *Byrd v. State*, 336 S.W.3d 242, 247 (Tex. Crim. App. 2011)). The alleged variance in this case—charging appellant with striking Berry's arm instead of his hand—falls within the category of "little mistakes." *See, e.g., Mancillas v. State*, No. 04-13-00023-CR, 2014 WL 1871337, at *2 (Tex. App.—San Antonio May 7, 2014, pet. ref'd) (mem. op., not designated for publication) (holding any variance was immaterial when indictment alleged appellant hit complainant with his hand and testimony indicated he elbowed her or hit her when he swung his arm back); *Saenz v. State*, No. 08-11-00341-CR, 2013 WL 3946011, at *2 (Tex. App.—El Paso July 24, 2013, no pet.) (mem. op., not designated for publication) (holding appellant failed to meet burden of demonstrating material variance where information alleged complainant was struck on the hand but testimony indicated she was struck on the arm). As discussed above, the evidence was sufficient to prove the offense charged and the proof at trial did not show an entirely different offense simply because appellant may have hit Berry's hand instead of his arm.

Moreover, as noted above, appellant offers no explanation regarding how the alleged variance between his allegedly striking Berry's hand instead of Berry's arm prevented him from adequately preparing for trial. Appellant does not cite to any place in the record, nor have we found any, where his trial counsel complained about any such difficulty on the record. Appellant also does not suggest how the alleged variance left him open to being prosecuted for resisting arrest in the future based on the information used in this case. The information specified that appellant resisted a search, and the proof at trial supported the jury's verdict on that offense. Accordingly, appellant has not met his burden of demonstrating that the alleged variance was material. *See Darby v. State*, No. 14-14-00687-CR, 2015 WL

12

6492515, at *6 (Tex. App.—Houston [14th Dist.] Oct. 27, 2015, no pet.) (mem. op., not designated for publication) ("Merely stating he was surprised or prejudiced by the variance is insufficient."); *Layman v. State*, No. 14-08-00701-CR, 2010 WL 3292786, at *2 (Tex. App.—Houston [14th Dist.] Aug. 19, 2010, pet. ref'd) (mem. op., not designated for publication) (holding appellant did not meet his burden where he provided no argument that the variance prevented him from preparing a defense or would subject him to the risk of being prosecuted twice). We therefore overrule appellant's third issue.

### *Jury Instruction*

In his fourth issue, appellant contends that the trial court erred in refusing two jury instructions that appellant requested. Specifically, appellant requested instructions stating that neither pulling away from an officer nor verbally arguing with an officer constituted resisting.

A trial court is required to deliver to the jury a "written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14; *Musgrove v. State*, 425 S.W.3d 601, 613 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The purpose of the charge is to inform the jury of the applicable law and to guide it in applying the law to the facts of the case. *Musgrove*, 425 S.W.3d at 613. A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue. *Id*.

Appellant's first requested instruction, that pulling away from an officer cannot constitute resisting, is a misstatement of the law. In support, appellant cites *Sheehan v. State*, 201 S.W.3d 820 (Tex. App.—Waco 2006, no pet.) (listing "pulling away from an arresting officer" among actions that would not constitute using force against an officer). However, in *Finley*, the Court of Criminal Appeals subsequently specifically held that evidence the defendant was "pulling against the

13

officers' force" was sufficient to demonstrate a use of force in the resisting arrest context. 484 S.W.3d at 928. Accordingly, the trial court did not err in denying this requested instruction.

The trial court also did not err in denying appellant's second requested instruction, that verbally arguing with an officer does not constitute resisting.[7] Such language is not in section 38.03. *See Musgrove*, 425 S.W.3d at 613. Moreover, as submitted, the jury charge required the jury to find that appellant used force against Berry, namely be striking Berry with his hand. This requirement negated the possibility that the jury might convict appellant based simply on his verbally arguing with Berry.[8] Accordingly, the trial court did not err in refusing the requested instruction, and we overrule appellant's fourth issue.

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/     Frances Bourliot
        Justice

Panel consists of Justices Christopher, Bourliot, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[7] In support of this proposed instruction, appellant cites only *Dobbs*, 434 S.W.3d 166. *Dobbs*, however, does not specifically address verbal arguments but more generally explains that the use of force required for a violation of section 38.03 must be directed "in opposition to, or in the direction of and/or in contact with, the officer himself, meaning the officer's physical person. . . . [It cannot merely be] force that is against the officer's goal of effectuating an arrest in the sense that it is hostile to or contrary to that goal." *Id*. at 173. *Dobbs* does not support an instruction regarding verbal communication.

[8] The jury charge did not define the word "force," and the word has many different definitions, but none of its definitions suggests that it could encompass verbal argument as used in the jury charge. *See* Black's Law Dictionary 760-61 (Deluxe 10th ed. 2014); The American Heritage Dictionary 522-23 (2d College ed. 1991).